**In re Claus VON BULOW, Petitioner.**

**Martha VON BULOW, by her next friends Alexander AUERSPERG, and Annie Laurie Auersperg-Kneissl, Plaintiffs,**

v.

**Claus VON BULOW, Defendant.**

**Docket 87–3006.**

United States Court of Appeals, Second Circuit.

Motion for writ of Mandamus Submitted April 7, 1987.

Decided Sept. 10, 1987.

Patterson, Belknap, Webb & Tyler, New York City, submitted for petitioner Claus von Bulow.

Frederic Parnon, New York City (Barrett Smith Schapiro Simon & Armstrong, New York City, of counsel), for plaintiffs.

Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Petitioner Claus von Bulow seeks a writ of mandamus directing the United States District Court for the Southern District of New York (Walker, J.) to vacate its discovery order of February 12, 1987, 114 F.R.D. 71, granting plaintiff the right to discover certain conversations between petitioner and his attorneys. Because the discovery order raises significant issues of first impression, mandamus is an appropriate remedy. Hence, the petition is granted.

## FACTS

On July 6, 1981 petitioner was indicted by a Newport County, Rhode Island, grand jury on two counts of assault with intent to murder for allegedly injecting his wife Martha von Bulow with insulin causing her to lapse into an irreversible coma. After a widely publicized jury trial, von Bulow was convicted on both counts on March 16, 1982. In April 1982 petitioner retained Harvard law professor Alan M. Dershowitz to represent him on appeal. In May 1982 von Bulow was sentenced to 30–years imprisonment, but granted bail pending appeal. On April 27, 1984 the Rhode Island Supreme Court reversed both convictions, *State v. von Bulow*, 475 A.2d 995 (R.I.), *cert. denied*, 469 U.S. 875, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984), and upon retrial, he was acquitted on June 10, 1985.

Shortly after the acquittal, petitioner's wife, by her next friends, Alexander Auersperg and Annie Laurie Auersperg-Kneissal, Martha von Bulow's children from a prior marriage (plaintiff), commenced this civil action in federal court against petitioner alleging common law assault, negligence, fraud, and RICO violations. These claims arose out of the same facts and circumstances as the Rhode Island criminal prosecution.

In May 1986 Random House published a book entitled *Reversal of Fortune—Inside the von Bulow Case*, authored by attorney Dershowitz, which chronicles the events surrounding the first criminal trial, the suc-

cessful appeal, and von Bulow's ultimate acquittal. After obtaining an advance copy of the book, plaintiff's counsel notified petitioner on April 23, 1986 that it would view publication as a waiver of the attorney-client privilege. Von Bulow's counsel responded that no waiver had occurred and that, accordingly, he would not act to stop the book's publication. After the book was released, von Bulow and attorney Dershowitz appeared on several television and radio shows to promote it.

Plaintiff then moved to compel discovery of certain discussions between petitioner and his attorneys based on the alleged waiver of the attorney-client privilege with respect to those communications related in the book. In order to avoid piecemeal rulings on each communication, counsel stipulated in July 1986 as to those controversial subjects appearing in *Reversal of Fortune*. On February 12, 1987 the United States District Court for the Southern District of New York (Walker, J.) found a waiver of the attorney-client privilege and ordered von Bulow and his attorneys to comply with discovery requested by plaintiff. *Von Bulow By Auersperg v. von Bulow*, 114 F.R.D. 71 (S.D.N.Y.1987).

Von Bulow now petitions this Court for a writ of mandamus directing the district court to vacate its discovery order. Because the relief sought is an extraordinary writ, we consider whether mandamus is an appropriate remedy and, if so, whether it should issue in this case.

## DISCUSSION

### I *The Availability of The Writ*

Under the All Writs Statute, a Court of Appeals is empowered to "issue all writs necessary or appropriate in aid of [its] ... jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1982). This power "is meant to be used only in the exceptional case," *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), and not as "a substitute for an appeal." *Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964).

See also Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam) (mandamus is "to be invoked only in extraordinary situations"). As we have noted, "the touchstones ... of review by mandamus are usurpation of power, clear abuse of discretion and the presence of an issue of first impression." *American Express Warehousing, Ltd. v. Transamerica Insurance Co.*, 380 F.2d 277, 283 (2d Cir. 1967).

█ Generally, of course, discovery orders are not reviewable by mandamus, *see, e.g., American Express Warehousing*, 380 F.2d at 284, only occasionally does there arise a discovery order presenting an important question of law. *See, e.g., Schlagenhauf*, 379 U.S. at 110–12, 85 S.Ct. at 238–39. In such case, mandamus provides a logical method by which to supervise the administration of justice within the Circuit. *See Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (noting the vital corrective and didactic function of mandamus); *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957) (acknowledging important function of mandamus to monitor district courts); *see generally* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.28, at 312 (2d ed. 1987); Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv.L. Rev. 595, 618 n. 96 (1973) ("In precisely such areas as discovery, advisory mandamus would be expected to have its greatest value.").

█ Recognizing this, we stated in *American Express Warehousing* that "[w]hen a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment," the writ of mandamus provides an escape hatch from the finality rule. 380 F.2d at 282; *see also Investment Properties Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707 (2d Cir.1972) (discovery issue found to be "the heart of the controversy"). Several reasons persuade us that the extraordinary writ should issue in this case.

A. *Novel Question of Law Raised*

First and foremost the petition raises significant novel questions of law justifying the issuance of a writ of mandamus. The district court held that the publication by an attorney of a book chronicling his client's case waives the attorney-client privilege—not just as to information actually disclosed in the book—but with respect to all communications underlying the subjects raised in it. It held that all such communications between petitioner and attorney Dershowitz, the author of *Reversal of Fortune*, were unprivileged. As the discussion below demonstrates, the district court's holding in extending the "fairness doctrine" to extrajudicial disclosures raises an issue which, so far as discernible, has not been previously litigated in this Circuit. In what the district court itself regarded as a novel and unprecedented ruling, it went on further to hold that communications between von Bulow and all of his trial and appellate counsel were similarly unprivileged.

In our view, mandamus properly lies to review these issues of first impression. *See Schlagenhauf*, 379 U.S. at 110–12, 85 S.Ct. at 238–39 ("That this issue was substantial is underscored by the fact that the challenged order ... appears to be the first of its kind in any reported decision in the federal courts...."); *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir.) ("petitioner raises an issue new to this court and discussed in only a few reported district court decisions...."), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591–92 (3d Cir.1984) ("the legal issue presented by this petition is new to this court ... there is only sparse discussion of it in the reported cases."); *Sanderson v. Winner*, 507 F.2d 477, 479 (10th Cir.1974) (per curiam) (issuing mandamus directing district court to vacate its discovery order due to "unwarranted extension" of the law), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975). *See also In re Cement Antitrust Litig.*, 688 F.2d 1297, 1304 (9th Cir.1982) ("[W]e are faced with the need to resolve a

significant question of first impression where the failure to do so may adversely affect the efficient operation of the district courts."), *aff'd by absence of quorum pursuant to 28 U.S.C. § 2109,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983).

Relying on *Xerox Corp. v. SCM Corp.,* 534 F.2d 1031 (2d Cir.1976) (per curiam), plaintiff urges that despite the novelty of the issues mandamus is nevertheless inappropriate in this case. In *Xerox,* appellate review was sought of pretrial discovery orders of documents assertedly protected by the attorney-client privilege. We stated that absent a 28 U.S.C. § 1292(b) certification, a persistent disregard of the Rules of Civil Procedure, or a manifest abuse of discretion, interlocutory review of pretrial discovery orders is not generally permitted. *Id.* at 1031–32. But, we also noted that the case presented no legal question of first impression or of extraordinary significance. *Id.* at 1032; *see also In re United States,* 565 F.2d 19, 22 (2d Cir.1977) (discussing *Xerox ), cert. denied,* 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). Since the district court's discovery order here raises such questions, granting mandamus in this case is not inconsistent with *Xerox.*

### B. *The Importance of Granting Mandamus*

In addition to raising novel issues, this petition also presents two important reasons justifying the issuance of the writ in this case. Without mandamus, petitioner has no other remedy adequate to preserve his confidence. And because the district court's holding raises a legal issue of general applicability, its resolution will aid in this Circuit's effective administration of justice.

### 1. *No Other Adequate Remedy Available*

The Supreme Court has stated that in reviewing mandamus a court must consider whether the party seeking the writ has any "other adequate means to attain the relief he desires." *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam).

No such adequate means are present here. Because the trial court's discovery order is interlocutory it is not appealable under 28 U.S.C. § 1291 (1982) until a final order is rendered in the litigation. *See, e.g., Borden Co. v. Sylk,* 410 F.2d 843, 845 (3d Cir.1969). Even were petitioner to be adjudicated in civil contempt for refusal to comply with the discovery order, as a party, he would have no immediate right to appeal. *See DeMasi v. Weiss,* 669 F.2d 114, 122–23 (3rd Cir.1982); *International Business Machs. Corp. v. United States,* 493 F.2d 112, 117–19 (2d Cir.1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). And, immediate appellate review by certification is appropriate only when the challenged order "involves a controlling question of law" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (1982). Since discovery orders are generally collateral in nature, they will rarely satisfy these requirements. *See Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1118 n. 14 (3rd Cir.1986); *Sporck,* 759 F.2d at 315 n. 4; *Beal v. Schul,* 383 F.2d 401, 402 (3d Cir. 1967) (Seitz, J., dissenting); *American Express Warehousing,* 380 F.2d at 285 n. 2 (Lumbard, Ch. J., dissenting); *Atlantic City Elec. Co. v. General Elec. Co.,* 337 F.2d 844, 845 (2d Cir.1964) (per curiam).

Thus, mandamus is particularly appropriate in the present circumstances where an important question of law is likely to evade review due to the collateral nature of the issue, *see Colonial Times Inc. v. Gasch,* 509 F.2d 517, 526 (D.C.Cir.1975) (mandamus may issue to correct an error in a discovery order if the issue "while important to the general course of a litigation," is collateral and thus "lost to appellate review in fact if not in theory.").

Further, an order that information be produced that brushes aside a litigant's claim of a privilege not to disclose, leaves only an appeal after judgment as a remedy. Such a remedy is inadequate at best. Compliance with the order destroys the right sought to be protected. *See, e.g., Sporck,* 759 F.2d at 314; *Bogosian,* 738 F.2d at 591;

*Jenkins v. Weinshienk,* 670 F.2d 915, 917 (10th Cir.1982). Often, to deny review is to deny the privilege. Although petitioner may ultimately succeed on appeal, his confidential communications will already have been exposed during the trial. Because in those circumstances taking an appeal afterwards is often an exercise in futility, courts have often entertained petitions for a writ of mandamus challenging discovery orders on the grounds of attorney-client privilege. *See, e.g., United States Dep't of Energy v. Crocker,* 629 F.2d 1341, 1344–45 (Temp. Emer.Ct.App.1980) (per curiam); *Diversified Indus. Inc. v. Meredith,* 572 F.2d 596, 599 (8th Cir.), *aff'd en banc,* 572 F.2d at 606 (1977); *Sanderson v. Winner,* 507 F.2d 477, 479 (10th Cir.1974) (per curiam), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Pfizer Inc. v. Lord,* 456 F.2d 545, 547–48 (8th Cir.1972) (per curiam); *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487, 492 (7th Cir.1970) (per curiam), *aff'd mem. by an equally divided court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971); *Continental Oil Co. v. United States,* 330 F.2d 347, 349 (9th Cir.1964).

In fact, the concern that a remedy after final judgment cannot unsay the confidential information that has been revealed may account for the liberal use of mandamus in situations involving the production of documents or testimony claimed to be privileged or covered by other more general interests in secrecy. *See, e.g., Schlagenhauf,* 379 U.S. at 110–12, 85 S.Ct. at 238–39 (order compelling physical examination); *Cipollone,* 785 F.2d at 1118 (order amending protective order); *Sporck,* 759 F.2d at 314 (attorney work-product privilege); *Bogosian,* 738 F.2d at 591 (same); *Jenkins,* 670 F.2d at 917 (order requiring disclosure of attorney's files); *Usery v. Ritter,* 547 F.2d 528, 532 (10th Cir.1977) (order compelling disclosure of informer's identity); *Rowley v. McMillan,* 502 F.2d 1326, 1335 (4th Cir.1974) (executive privilege); *Investment Properties,* 459 F.2d at 708 (order vacating notice of deposition); *United States v. United States District Court,* 444 F.2d 651, 653 (6th Cir.1971) (order compelling disclosure of monitored conversa-

tions), *aff'd,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *United States v. Hemphill,* 369 F.2d 539, 543 (4th Cir.1966) (order compelling disclosure of informer's identity); *Madison-Lewis, Inc. v. MacMahon,* 299 F.2d 256, 257 (2d Cir.1962) (per curiam) (order opening private files); *Hartley Pen Co. v. United States District Court,* 287 F.2d 324, 330 (9th Cir.1961) (order requiring disclosure of trade secrets).

This need for timely protection is particularly urgent where the discovery sought is, as here, allegedly blanketed by the absolute attorney-client privilege. *See Kerr v. United States District Court,* 426 U.S. 394, 404, 96 S.Ct. 2119, 2124–25, 48 L.Ed.2d 725 (suggesting that mandamus is more appropriate where privilege claimed is absolute). We recognize that discovery orders are normally committed to the district court's discretion, *see, e.g., DeMasi,* 669 F.2d at 122. But petitioner argues that his communications are protected from discovery by the attorney-client privilege. If petitioner is correct, he will now be compelled—if we deny mandamus—to reveal communications that strong public policy protects from disclosure. *See Bogosian,* 738 F.2d at 592. Consequently, the inadequacy of petitioner's other remedies requires present review of the novel issues raised in the petition.

### 2. *Aiding the Administration of Justice*

In addition, issuing the writ will aid the administration of justice within the Circuit. Mandamus is appropriate "when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice." *Colonial Times, Inc. v. Gasch,* 509 F.2d 517, 524 (D.C.Cir.1975). The Seventh Circuit held that "because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate."

*Harper & Row,* 423 F.2d at 492; *see also Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 654–55 (10th Cir.1984) (mandamus appropriate to review discovery orders involving a claim of privilege when disclosure would render meaningful appellate review impossible and when disclosure involves questions of substantial importance to the administration of justice); *General Motors Corp. v. Lord,* 488 F.2d 1096, 1099 (8th Cir.1973) ("Extraordinary circumstances may be presented where the order under attack exemplifies a novel and important question in need of guidelines for the future resolution of similar cases."); *Pfizer,* 456 F.2d at 548 (adopting Seventh Circuit's analysis and issuing writ of mandamus to prevent discovery of documents protected by attorney-client privilege).

The attorney-client privilege is among the oldest common law privileges dating back to the 16th Century. 8 J. Wigmore, *Evidence* § 2290 (McNaughton rev. ed. 1961) (*Wigmore*). It exists for the purpose of encouraging full and truthful communication between an attorney and his client and "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). But, if the purpose for which the privilege exists is to be effectuated, those discussions that are privileged must be predictable with some degree of certainty. An uncertain privilege—or one which purports to be certain, but results in widely varying applications by the courts—is little better than no privilege. Because the district court's holdings establish a new attorney-client privilege rule of general applicability that threatens to upset this predictability, it merits prompt attention and resolution.

In sum, the issues raised in the instant petition justify the issuance of the extraordinary writ. Having determined that mandamus is available, we turn to the merits.

## II *The Propriety of the Discovery Order*

The district court made several relevant rulings, holding initially that the petitioner waived his attorney-client privilege by acquiescing in and encouraging the publication of *Reversal of Fortune.* It then examined the scope of that waiver. In so doing, the district judge found that the waiver extended to (1) the contents of the published conversations, (2) all communications between petitioner and attorney Dershowitz relating to the published conversations, and (3) all communications between petitioner and any defense counsel relating to the published conversations. We examine each of these rulings.

### A. *The Waiver of the Attorney-Client Privilege*

■ By allowing publication of confidential communications in his attorney's book *Reversal of Fortune,* petitioner was held to have waived his attorney-client privilege. In reaching that conclusion, the district court considered the following facts. First, petitioner knew of, consented to, and actually encouraged attorney Dershowitz's plans to write a book providing an "insider look" into his case. Second, petitioner was warned before publication that such an act might trigger a waiver and, yet, took no active measures to preserve his confidences. Third, after publication, petitioner joined his attorney in enthusiastically promoting the book on television and radio shows. Based on these key facts, the district court determined that von Bulow had waived his attorney-client privilege.

■ Petitioner argues that this holding is erroneous because only the client—and not his attorney—may waive the privilege. Of course, the privilege belongs solely to the client and may only be waived by him. An attorney may not waive the privilege without his client's consent. *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 556 (2d Cir.1967). Hence, absent a client's consent or waiver, the publication of confidential communications by an attorney does not constitute a relinquishment of the privilege by the client. *See, e.g., Schnell v. Schnall,* 550 F.Supp. 650, 653 (S.D.N.Y.1982) (no waiver of attorney-client privilege where attorney testified at SEC

hearing without presence or authorization of client). *See also Wigmore, supra,* § 2325, at 633 (attorney's voluntary disclosures remain privileged unless impliedly authorized by client).

 A client may nonetheless by his actions impliedly waive the privilege or consent to disclosure. *See United States ex rel Edney v. Smith,* 425 F.Supp. 1038, 1052 (E.D.N.Y.1976) (implied waiver), *aff'd,* 556 F.2d 556 (2d Cir.), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977); *Drimmer v. Appleton,* 628 F.Supp. 1249, 1252 (S.D.N.Y.1986) (implied consent); *Wigmore, supra,* § 2327. And an attorney may, in appropriate circumstances, possess "an implied authority to waive the privilege on behalf of his client." *Drimmer,* 628 F.Supp. at 1251; *Wigmore, supra,* § 2325. Moreover, it is the client's responsibility to insure continued confidentiality of his communications. In *In re Horowitz,* 482 F.2d 72 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973), Judge Friendly, speaking for the Court, warned: "[i]t is not asking too much to insist that if a client wishes to preserve the privilege under such circumstances, he must take some affirmative action to preserve confidentiality." *Id.* at 82.

Applying these principles, it is quite clear that in finding that von Bulow waived his privilege the district court did not abuse its discretion. In light of petitioner's acquiescence in and encouragement of *Reversal of Fortune*'s publication, Judge Walker properly concluded that von Bulow consented to his attorney's disclosure of his confidences and effectively waived his attorney-client privilege. Our discussion now turns to examine the breadth of that waiver.

### B. *The Scope of the Waiver*

#### 1. *The Contents of the Published Conversations*

The district court held that plaintiffs were entitled to discover "the entire contents of all conversations from which Dershowitz published extracts in *Reversal of Fortune.*" 114 F.R.D. at 79. The four relevant conversations between von Bulow and his attorneys were their initial one, and the ones regarding the bail hearing, appellate strategy, and von Bulow's decision to testify on his own behalf. *Id.* at 79 n. 2. Under that ruling, plaintiff is permitted to discover those parts of the four identified conversations not made public in the book. Petitioner argues that the district court's holding improperly broadened the fairness doctrine to include extrajudicial disclosures and that, accordingly, the discovery order cannot stand. We agree.

Relying on *United States v. Tellier,* 255 F.2d 441 (2d Cir.), *cert. denied,* 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958) and *Teachers Insurance & Annuity Association of America v. Shamrock Broadcasting Co.,* 521 F.Supp. 638 (S.D.N.Y.1981), the district judge based his decision on an extension of "[t]he principle that disclosure of a portion of a privileged conversation entitles an adversary to discovery of the matters discussed in the remainder of the conversation...." 114 F.R.D. at 79. The court reasoned that where reputation is at stake in a major case, it is tried today before the bar of public opinion, as well as in a courtroom. *Id.* at 78–79. Judge Walker believed it unfair to permit a party to make use of privileged information as a sword with the public, and then as a shield in the courtroom. *Id.* at 79. Thus, the trial judge found what is generally called a "waiver by implication", *see Wigmore, supra,* § 2327, at 635, based on fairness considerations.

 These considerations—which underlie "the fairness doctrine"—aim to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information. Under the doctrine the client alone controls the privilege and may or may not choose to divulge his own secrets. But it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. *Hunt v. Blackburn,* 128 U.S. 464, 470–71, 9 S.Ct. 125, 127, 32

L.Ed. 488 (1888). From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder. *McCormick On Evidence* § 93, at 194–95 (2d ed. 1972).

Yet this rule protecting the party, the factfinder, and the judicial process from selectively disclosed and potentially misleading evidence does not come into play when, as here, the privilege-holder or his attorney has made extrajudicial disclosures, and those disclosures have not subsequently been placed at issue during litigation. In fact, the cases finding, as the district court did here, implied waivers on account of fairness involved material issues raised by a client's assertions during the course of a judicial proceeding. *See, e.g., Hunt v. Blackburn*, 128 U.S. at 470–71, 9 S.Ct. at 127; *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 201 (2d Cir.), *cert. denied*, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F.Supp. 977, 979 (D.Del.1982) ("A client ... may waive the privilege by *deliberately injecting into the case* the advice which he received from his attorney.") (emphasis added), *aff'd*, 758 F.2d 668 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985); *United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y.1979); *International Tel. & Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 185–86 (M.D.Fla.1973) ("[I]f the client or his attorney at his instance takes the stand and testifies to privileged communications in part this is a waiver as to the remainder ... about the same subject"); *Beckette v. State*, 355 A.2d 515, 521 (Md.Ct.Spec.App. 1976) (client's decision to call attorney as witness waived attorney-client privilege).

Neither of the cases relied upon by the district court compel an opposite result. In *Tellier*, 255 F.2d 441, the government had called the defendant's attorney as its chief witness. The attorney testified to a conversation he had with defendant over the latter's objection. We held the conversation was not privileged because it was not intended to be confidential, but was meant to be passed on to third parties. This is quite different from the case at bar where von Bulow's conversations with attorney Dershowitz were originally intended to be confidential, and were therefore privileged, at least prior to disclosure. *Teachers Insurance*, 521 F.Supp. 638, is also unsupportive of the district court's conclusion. In that case a party had *voluntarily* disclosed documents to the SEC that would otherwise have been privileged, and this was held to have waived the privilege. These disclosures made in a trial setting have no application to disclosures in a book made outside a litigation context.

Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication. Hence, though the district court correctly found a waiver by von Bulow as to the particular matters *actually disclosed* in the book, it was an abuse of discretion to broaden that waiver to include those portions of the four identified conversations which, because they were not published, remain secret.[1]

### 2. Related Conversations With Dershowitz

The district court next ruled that von Bulow's waiver extended to subject matter areas related to the published conversations with Dershowitz.[2] 114 F.R.D. at 79. This "subject matter waiver", which allows the attacking party to reach all privileged conversations regarding a particular sub-

---

**1.** Of course, it is conceivable that assertions before trial may mislead or prejudice an adversary at trial and thereby impede the proper functioning of the judicial system. For that reason plaintiff is entitled to attempt to demonstrate in subsequent proceedings that von Bulow's assertion of his attorney-client privilege is misleading or otherwise prejudicial. At such time, the district court may, in its discretion, reevaluate the scope of petitioner's waiver.

**2.** It held that the waiver encompassed the following subject matter areas: (1) the initial meeting between von Bulow and his attorney Dershowitz; (2) the development of new evidence leads; (3) the potential drug use by von Bulow's family members; (4) von Bulow's bail application; (5) appellate strategy; (6) the acceptance

ject once one privileged conversation on that topic has been disclosed, is simply another form of the waiver by implication rule discussed above. Like the "implied waiver", the subject matter waiver also rests on the fairness considerations at work in the context of litigation. *See Smith,* 538 F.Supp. at 979 ("It would be unfair to allow a client to assert the attorney-client privilege and prevent disclosure of damaging communications while allowing the client to disclose other selected communications solely for self-serving purposes.")

For this reason, it too has been invoked most often where the privilege-holder has attempted to use the privilege as both "a sword" and "a shield" or where the attacking party has been prejudiced at trial. *See In Re Sealed Case,* 676 F.2d 793, 809 n. 54 (D.C.Cir.1982) (Courts retain discretion "not to impose full waiver as to all communications on the same subject matter where the client has merely disclosed a communication to a third party, as opposed to making some use of it."); *Shearman & Sterling v. Ethyl Petroleum Additives, Inc.,* Nos. 2–124, M8–85, C84–3894, C84–743 (S.D.N.Y. May 30, 1986) [Available on WESTLAW, DCT database] (subject matter waiver inapplicable unless one party "seeks to use a part of the communication while withholding other portions."); *Koster v. Chase Manhattan Bank,* No. 81 Civ. 5018 (S.D.N.Y. Sept. 18, 1984) [Available on WESTLAW, DCT database] (deliberate disclosure by client of privileged communications did not waive attorney-client privilege where client did "not put in issue in any way the substance of her communications with her attorney" and the partial disclosure was "not misleading"); *Status Time Corp. v. Sharp Elec. Corp.,* 95 F.R.D. 27, 34 (S.D.N.Y.1982) (waiver limited to disclosed document because fairness considerations not shown); *Byrnes v. IDS Realty Trust,* 85 F.R.D. 679, 688–89 (S.D.N.Y.1980) (no subject matter waiver where no prejudice to attacking party); *Aronoff,* 466 F.Supp. at 862–63 ("[W]here the party attacking the privilege has not been prejudiced, ... there is no reason to find a waiver by implication.").

For example, in *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18 (9th Cir.1981), the Ninth Circuit held that the client had waived its attorney-client privilege "only as to communications about the matter actually disclosed" because the disclosure occurred early in the proceedings, was made to opposing counsel rather than to the court, and was not demonstrably prejudicial to other party. *Id.* at 25. Professor Wigmore's formulation of the subject matter waiver rule also contemplates the testimonial use of privileged information in the courtroom:

> The client's offer of his own or the attorney's *testimony* as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter.

*Wigmore, supra,* § 2327, at 638.

But where, as here, disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed. Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak. But related matters not so disclosed remain confidential. Although it is true that disclosures in the public arena may be "one-sided" or "misleading", so long as such disclosures are and remain extrajudicial, there is no *legal* prejudice that warrants a broad court-imposed subject matter waiver. The reason is that disclosures made in public rather than in court—even if selective—create no risk of *legal* prejudice until put at issue in the litigation by the privilege-holder. Therefore, insofar as the district court broadened petitioner's waiver to include related conversations on the same subject it was in error.

---

of the prosecution's lab results at the first trial; (7) the weaknesses in the prosecution's case; (8) scientific and other investigations undertaken by the defense; (9) whether von Bulow should testify on his own behalf; (10) defendant's life story; (11) defendant's ability to refute the testimony of Maria and Alexander; (12) whether von Bulow placed insulin in the black bag or needle; and (13) likely questions, answers, and jury responses should von Bulow take the stand. 114 F.R.D. at 80–83.

### 3. Related Conversations With Other Defense Attorneys

Again invoking the fairness doctrine, the district court found that von Bulow's waiver extended to his conversations with all other defense attorneys which relate to the subject matter disclosed in the book. 114 F.R.D. at 80. Since we have already found that the publication of *Reversal of Fortune* did not result in a sweeping subject matter waiver, that waiver *a fortiori* cannot extend to von Bulow's other attorneys.

### CONCLUSION

In sum, mandamus lies in this case because the discovery issue involved is one of first impression and important to the administration of justice. The error asserted concerns a misapprehension of the basic purpose of the fairness doctrine, and its correction will provide direction in developing standards requisite to finding an implied waiver of the attorney-client privilege. Thus, the petition for a writ of mandamus is granted and the district court is directed to vacate its discovery order of February 12, 1987.

Writ of mandamus granted.