## In re DEPARTMENT OF INVESTIGATION OF the CITY OF NEW YORK, Petitioner.

### UNITED STATES of America

v.

### Bess MYERSON, Carl A. Capasso, a/k/a "Andy Capasso" and Hortense Gabel, Defendants.

### No. 1407, Docket 88–3026.

United States Court of Appeals, Second Circuit.

Argued June 13, 1988.

Decided June 29, 1988.

Stuart E. Abrams, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City, David N. Lawrence, John F. Savarese, Asst. U.S. Attys., Kevin J. Ford, Sp. Asst. U.S. Atty., New York City, of counsel), for amicus curiae The U.S.

Doron Gopstein, First Asst. Corp. Counsel for City of New York, New York City (Peter L. Zimroth, Corp. Counsel for City of New York, Laurence A. Levy, David C. Bloomfield, Elizabeth I. Freedman, New York City, of counsel), for petitioner.

Michael S. Feldberg, New York City (Steven N. Gersten, Shea & Gould, New York City, of counsel), for defendant Hortense W. Gabel.

Before LUMBARD, MESKILL and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This petition for writ of mandamus by the Department of Investigation of the City of New York ("DOI") arises out of a criminal proceeding in the Southern District against a former Commissioner of Cultural Affairs of the City of New York, Bess Myerson; a New York State Judge, Hortense Gabel; and Carl "Andy" Capasso, an intimate companion of Myerson. *United States v. Myerson*, No. 87 Cr. 796 (S.D.N.Y. Apr. 13, 1988) [available on WESTLAW, 1988 WL 36315]. The DOI, supported by the United States ("government") as *amicus curiae*, seeks a writ directing Judge Keenan to quash a subpoena *duces tecum* served upon the DOI by Gabel. That subpoena sought the files of the so-called "Tyler Commission." We deny the petition on

the grounds that the issues it raises should be resolved in an appeal after the DOI has been adjudicated in contempt.

## BACKGROUND

The Tyler Commission, chaired by Harold R. Tyler, Jr., was created in response to Commissioner Myerson's invoking the fifth amendment in the course of a federal grand jury investigation. This investigation concerned allegations that Myerson had employed Gabel's daughter in the Department of Cultural Affairs as a quid pro quo for Gabel, the presiding judge in Capasso's divorce proceedings, substantially reducing the maintenance and support payments Capasso was required to pay his wife. Both before and after Myerson invoked the fifth amendment, the DOI has been an active participant in the federal investigation. A DOI Inspector General has been cross-designated as a Special Assistant United States Attorney for purposes of the investigation and trial, and several other DOI attorneys and investigators have, in the course of their participation in the federal investigation, had access to the federal grand jury minutes and evidence.

Myerson was a close associate of Mayor Koch. Because the investigation raised questions regarding her conduct as the Commissioner of Cultural Affairs, political and prudential considerations necessitated an early, credible investigation concerning that conduct. On January 22, 1987, therefore, Mayor Koch appointed Tyler as a Special Counsel to the Mayor for the purpose of investigating "the circumstances and substantive issues in the context of which ... Myerson availed herself of her Fifth Amendment privilege before a Federal grand jury, which might in any way involve the discharge of Commissioner Myerson's official duties and any other matters reasonably related thereto." The Mayor could not vest the Commission with compulsory process. On January 28, 1987, Kenneth Conboy, then Commissioner of the DOI, an agency with such power, therefore designated Tyler and his staff as DOI agents "for the purpose of conducting the investigation directed by the Mayor on January 22, 1987 into matters which related or may relate to the office, standards, duties and actions of Bess Myerson as Cultural Affairs Commissioner...." The DOI was actively involved in the federal investigation. To avoid any risk of jeopardizing the federal criminal investigation, Conboy's designation of Tyler and his staff specifically stated that any immunized testimony obtained by the Commission under legal compulsion from Myerson would not be disclosed to anyone in the DOI. Because the report of the Tyler Commission was to be shared with the Mayor, moreover, the Tyler Commission was not informed of testimony before the federal grand jury. This limitation was thought necessary to comply with strictures of Fed.R.Crim.P. 6 concerning grand jury secrecy.

Except for its lack of access to grand jury testimony, the Tyler Commission appears to have been a fully operating part of the joint DOI-federal investigation. Tyler understood from the beginning of his investigation that, although he was appointed to look into Myerson's conduct as a Commissioner, any evidence of criminal conduct uncovered in the course of his investigation would have to be routinely forwarded to prosecutorial authorities under a provision of the New York City Charter. Moreover, throughout the course of the Tyler Commission's investigation, Tyler and his staff conferred on a regular basis with the DOI and federal authorities and briefed them on their activities. These briefings apparently encompassed the Tyler Commission's entire investigation because the Commission decided, again to avoid any risk to the federal investigation, not to compel testimony by Myerson. The U.S. Attorney and the DOI in turn shared their evidence and leads, except for grand jury testimony, with the Commission.

After the Tyler Commission completed its report, the records of its investigation became part of the files of the DOI. On January 13, 1988, after she had been indicted, Gabel served on the DOI a subpoena *duces tecum* pursuant to Fed.R.Crim.P. 17(c) seeking production of "[a]ny and all documents, notes, papers, transcripts, pic-

tures having anything to do with the investigation and report by Harold R. Tyler, Jr., Special Counsel, concerning his investigation of Bess Myerson...." The DOI moved to quash the subpoena on the grounds, *inter alia:* (i) that it was an impermissible evasion of Fed.R.Crim.P. 16[1] and the Jencks Act, 18 U.S.C. § 3500;[2] (ii) that Gabel had failed to make an adequate showing of need under Fed.R.Crim.P. 17(c);[3] and (iii) that the material sought was privileged. In support of (i), the government agreed to treat the documents as subject to Rule 16 and the Jencks Act.

Judge Keenan held that Rule 16 and the Jencks Act did not apply because the Tyler Commission was not part of the federal prosecution. In this regard, he relied principally upon the facts: (i) that the Tyler Commission was concerned with Myerson's conduct in office rather than criminality; (ii) that the Commission could not share immunized testimony by Myerson with the DOI or federal authorities; and (iii) that the Commission was not privy to testimony

before the federal grand jury. He also rejected the argument that production of the materials designated in the subpoena was not required under the standards enunciated in *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974). Judge Keenan did, however, refuse to order production of some documents on the grounds that they were subject to either the law enforcement or attorney-work-product privileges.

The DOI appealed and also sought a writ of mandamus directing Judge Keenan to quash the subpoena *duces tecum.* We dismissed the appeal for lack of jurisdiction because it was clearly interlocutory. In this opinion we deny the petition for writ of mandamus on the grounds that the issues raised should be resolved by appeal following a contempt adjudication rather than by mandamus.

## DISCUSSION

The DOI, supported by the government as *amicus curiae,* argues that the petition

1. Rule 16 provides in pertinent part:
   (a)(1)(A) *Statement of Defendant.* Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged....
   \*   \*   \*   \*   \*   \*
   (a)(1)(C) *Documents and Tangible Objects.* Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

2. Section 3500 provides in pertinent part:
   (a) In any criminal prosecution brought by the United States, no statement or report in the

possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
   (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

3. Rule 17(c) provides:
   A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

should be granted on the grounds that the documents in question can be disclosed pursuant only to Fed.R.Crim.P. 16 and the Jencks Act. The petition also asserts that the district court's application of Fed.R. Crim.P. 17(c) is inconsistent with the decision in *Nixon* and that the district court also misapplied the law enforcement and attorney-work-product privileges. We believe it clear that our decision in *In re Weisman*, 835 F.2d 23, 25–27 (2d Cir.1987), precludes review by mandamus of claims regarding the particularized application of Rule 17(c) or of the asserted privileges. We turn therefore to the issues raised under Rule 16 and the Jencks Act.

The legal issues arising under Rule 16 and the Jencks Act are without direct precedent in this Circuit. We thus appear not to have ruled upon the precise circumstances in which documents in the possession of the state or local law enforcement officials must be disclosed pursuant to Rule 16 and the Jencks Act. *See United States v. Paternina–Vergara*, 749 F.2d 993, 997 (2d Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *United States v. Bermudez*, 526 F.2d 89, 100 & n. 9 (2d Cir.1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). In particular, we have not ruled on whether the files of an investigatory body within the DOI acting as Special Counsel to the Mayor of New York regarding an official's conduct in City office but otherwise (with the two limitations described above) participating in a joint DOI-federal investigation, must be disclosed by the government under Rule 16 and the Jencks Act. If disclosure of such files is not mandatory under those provisions, a final issue arises. The government stresses that it has "agreed" to treat the Tyler Commission files as subject to disclosure under Rule 16 and the Jencks Act, whether or not disclosure is mandatory. It argues that such an agreement forecloses resort by a defendant to Fed.R.Crim.P. 17(c) because the documents are *ipso facto* reasonably available to the defense under the agreement. While such an agreement may bind the government in a particular case to make disclosure pursuant to Rule

16 and the Jencks Act, it does not necessarily follow that such an agreement forecloses discovery under Rule 17(c), particularly if disclosure under Rule 16 and the Jencks Act is not co-extensive with discovery under Rule 17(c) or if the timeliness of discovery varies under the two rules.

The DOI and the government assert that resolution of these issues by mandamus is appropriate under our decision in *In re von Bulow*, 828 F.2d 94 (2d Cir.1987). That decision held that in some circumstances important and novel questions of law arising in pre-trial discovery may be resolved by means of mandamus. We tend to share the view that the issues raised by the instant petition are sufficiently important and novel to meet those aspects of the *von Bulow* test. Federal law enforcement officials should have ample guidance as to whether defendants will have access to the files of cooperating state and local officials before entering into joint investigations. As we noted earlier, moreover, the questions raised here have not been addressed by this court. Nevertheless, we believe that other elements required by *von Bulow* to justify mandamus relief are lacking and therefore deny the petition.

We need not repeat in detail all the elements that must be present to justify the extraordinary relief of mandamus. It suffices to say that *von Bulow* did not discard this Circuit's well-settled rule that an "extreme need for reversal" must be shown to justify the mandamus remedy. *In re Weisman*, 835 F.2d at 27 (quoting *American Express Warehousing, Ltd. v. Transamerica Ins.*, 380 F.2d 277, 282 (2d Cir. 1967)); *see also Investment Properties International, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707 (2d Cir.1972). The *von Bulow* opinion thus stressed that the circumstances before it involved the invocation of the attorney-client privilege by a party to the litigation who would be unable to appeal from an adjudication holding him in civil contempt. 828 F.2d at 98. As a consequence, the important questions concerning the attorney-client privilege raised by the petition would remain unresolved. The failure to resolve those questions would in

turn leave future trial courts without guidance, a result at odds with the perceived need to draft privileges in a way that renders them predictable. *Id.* at 99–100. The decision in *von Bulow* thus expressly required a showing that no other adequate remedy was available, *id.* at 98–99, and that issuing the writ would aid the administration of justice within the Circuit by resolving a novel and troublesome question that would be raised in the future in circumstances that might again preclude review, *id.* at 99–100.

Neither element exists in the instant case. The DOI can, after having been adjudicated in contempt, raise the issues now before us in an expedited appeal, and we can then resolve them. We appreciate that an agency like the DOI is reluctant to be labeled a contemnor but believe that the method of appealing from what is a technical contempt designed solely to obtain appellate review of arguable legal claims is so common that no reputational injury to the DOI will result.

The petition is denied.