**UNITED STATES of America,**

v.

**Autumn JACKSON, Jose Medina, a/k/a "Yose Medina," and Boris Sabas, a/k/a "Boris Shmulevich," Defendants.**

**No. 97 Cr. 0121 (BSJ).**

United States District Court,
S.D. New York.

July 3, 1997.

---

Robert M. Baum, Federal Defender Division, Edward S. Zas, Federal Defender Office, The Legal Aid Society, New York City, for Autumn Jackson.

Neil B. Checkman, New York City, for Jose Medina.

Anthony Richard Cueto, New York City, for Boris Sabas.

Paul A. Englemayer, Mary Jo White, U.S. Atty. Office, S.D.N.Y., New York City, for U.S.

## MEMORANDUM & ORDER

JONES, District Judge.

Pending is the Government's application to defeat the assertion of the attorney-client privilege over a conversation between defendant Jose Medina and an attorney—who is not his current lawyer—recorded on a cassette tape ("Tape SD–5") by Medina. The Court has reviewed the tape and its transcript (the "Transcript") *in camera* and, for the reasons stated below, grants in part the Government's application.

Medina was arrested by the Federal Bureau of Investigation on January 18, 1997 in connection with an alleged scheme to extort money from the actor Bill Cosby. Following Medina's arrest but before he was arraigned or appointed counsel, he waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and made a statement to the F.B.I. According to the agents who took the statement, Medina said:

> ... [he] telephonically contacted an attorney in an attempt to determine if what they were doing was legal. The attorney offered an opinion that it was perfectly legal for JACKSON to ask her father for money, however, if an attorney asked on her behalf, it would be extortion.

(F.B.I. Report of Interview with Medina, transcribed Jan. 21, 1997, at 2–3.) The defendant does not challenge the accuracy of the agents' account of his statement or its voluntariness.

The same day Medina made the statement to the F.B.I., a search pursuant to a warrant was conducted both at Medina's California hotel room and hotel safe deposit box. The search uncovered, among other things, Tape SD–5, which contains a recording of the conversation Medina referred to in his statement to the F.B.I.

The Government lawyers on the trial team have not listened to Tape SD–5. Rather, the tape was reviewed in the Office of the United States Attorney under a "Chinese Wall" arrangement by an Assistant United States Attorney not involved in the investigation or the trial.

The Government's trial team now requests access to the conversation on Tape SD–5 between Medina and the attorney. Specifically, it contends that by volunteering the information reported in his F.B.I. statement, Medina waived any attorney-client privilege that may have attached to at least certain portions of the conversation. (Letter from Government to Court, dated May 28, 1997, at 1.)

Medina, however, argues that he merely made "a general assertion without any meaningful substantive content," and that such an

assertion does not effect a waiver of the attorney-client privilege. (Letter from Neil B. Checkman to Court, dated June 6, 1997, at 1.) In the alternative, Medina states that any waiver of the privilege is limited to certain portions of Tape SD–5. (*Id.*)

The Court finds that Medina disclosed the substance of the advice he received, but not the substance of the statements he made or the questions he asked.

■ When a party voluntarily discloses a confidential communication with his lawyer, he waives whatever privilege may have attached previously to that communication. *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459, 468 (S.D.N.Y. 1996); *see also United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir.1990) (finding that defendant who voluntarily disclosed to the grand jury the substance of a communication with tis attorney waived his attorney-client privilege with regard to that communication).

■ Where that disclosure is extrajudicial, however, the waiver only applies to "the *particular matters* actually disclosed." *In re von Bulow*, 828 F.2d 94, 102 (2d Cir.1987) (emphasis added). In this connection, an extrajudicial statement to a third party that does not reveal the substance of a privileged communication does not effect a waiver. *Cf. In re Kidder Peabody Securities Litigation*, 168 F.R.D. at 470. In determining whether a statement to another party divulged the substance of a privileged communication, the Court should not look to "fairness concerns," *In re von Bulow*, 828 F.2d at 101–02, but should make "prudential distinctions between what was revealed and what remains privileged," *In re Grand Jury Proceedings*, 78 F.3d 251, 255–56 (6th Cir.1996) (citing *In re von Bulow*).

■ Here, Medina told the F.B.I. that he phoned an attorney "in an attempt to determine if what [he and his codefendant] were doing was legal." The Government argues that this statement waives the privilege with regard to any sections of the tape containing communications about "the conduct of [one of Medina's codefendants] and Medina toward Cosby." (Letter from Government to Court, dated July 1, 1997, at 1.)

The Government, however, reads Medina's statement too broadly. Medina only told the F.B.I. that he asked a lawyer if "what" he and the codefendant were doing was legal. He did not disclose the underlying statements to which he alluded; he did not make any statement revealing the substance of his remarks and questions to the lawyer. *Cf. In re Kidder Peabody Securities Litigation*, 168 F.R.D. at 467–69 (finding waiver of interview documents "specifically alluded to" in a communication to a third-party) (applying *In re von Bulow*). In other words, Medina's statement to the F.B.I. did not reveal any particular matters he conveyed to the lawyer. Rather, the statement stands only as a general, contentless assertion. As such, it does not effect a waiver with regard to those sections of rape SD–5 containing communications dealing with Medina and his codefendant's conduct toward Cosby. This finding, while narrow, is especially appropriate in light of the strong interest in preserving the attorney-client privilege wherever it attaches. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (stating that attorney-client privilege is necessary to encourage clients to communicate freely with their attorneys).[1]

■ Medina did divulge to the F.B.I., however, that the attorney told him "it was perfectly legal for [his co-defendant] to ask her father for money" but "if an attorney asked on her behalf, it would be extortion." This statement reveals the substance of specific advice the attorney gave Medina.[2] As such,

---

1. Of course, should Medina raise issues at trial that implicate the advice of counsel, a fairness analysis will apply. At that point, the Court may find that Medina waived the balance of his attorney-client privilege. *See In re Kidder Peabody Securities Litigation*, 168 F.R.D. at 469.

2. That Medina did not provide the F.B.I. with exact quotations from his conversation with the attorney is inapposite. *See In re Kidder Peabody Securities Litigation*, 168 F.R.D. at 469. ("Disclosure of the substance of a privileged communication is as effective a waiver as a direct quotation since it reveals the 'substance' of the statement.")

it effects a waiver as to two segments within the conversation between Medina and a lawyer recorded on Tape SD–5.[3]

The first segment of the lawyer-Medina conversation corresponding to what Medina told the F.B.I. about the lawyer's advice is found in the Transcript beginning at page VI8X with the lawyer's statement that begins,

Okay, so at this point, all she can do—

. . .

and continues through to the end of page VI9X.

The second segment of the lawyer-Medina conversation corresponding to what Medina told the F.B.I. about the lawyer's advice is found in the Transcript at page VI14X with Medina's statement,

But she, as his daughter, making, making a financial approach to him, that's not extortion.

and ends on the same page with the lawyer's one-line response, "No, but I can't do it."

Accordingly, this Court finds that Medina waived his attorney-client privilege with respect to two segments of his conversation with a lawyer recorded on Tape SD–5.

So ordered.

---

3. As is clear from this Memorandum & Order, Medina's statement to the F.B.I. does not waive the attorney-client privilege with regard to everything the lawyer told Medina.