[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Patricia Kowalonek, alleges in this proceeding that she suffered personal injuries caused by the negligence of the defendant on April 10, 1990. Attorney James J. Farrell (Farrell), CT Page 4072 the plaintiff's brother, was her counsel of record in the tort action for personal injury initially brought in the United States District Court for the District of Connecticut. The plaintiff asserts that the federal court dismissed her action on May 4, 1993, and Farrell brought the present action in the Superior Court on May 16, 1994.
October 4, 1995, the plaintiff filed a grievance with the Statewide Grievance Committee against Farrell. She claimed that Farrell failed to file a pretrial memorandum thereby causing the dismissal of her action in the federal court; that he never communicated to her the fact of the dismissal or any attempt to reinstate the action; and, that as late as April 3, 1995, Farrell still led her to believe that her case was pending before the federal court. A formal hearing on the record was held on April 3, June 5 and November 14, 1996.[1] On August 26, 1996, the court granted Farrell's motion to withdraw his appearance and the plaintiff has subsequently retained new counsel.
The defendant gave notice to the plaintiff to depose Farrell on November 16, 1999. The plaintiff filed a motion to quash and a motion for a protective order on November 8, 1999. The two motions are identical in wording and neither is accompanied by a memorandum of law.
The plaintiff makes the following argument in her motions: that any information Farrell, obtained from her regarding her personal injury case here and her other injuries or other cases was done pursuant to their attorney-client relationship; the intended deposition of Farrell would violate the attorney-client privilege and her right to privacy regarding her communications with Farrell as he would inevitably disclose confidential information that she provided him in the process of obtaining legal advice; that the deposition would require Farrell to violate rules or codes of professional duties and ethics; and that her private communications with her former attorney were protected from discovery as the attorney's work product.
The defendant argues that the plaintiff has waived her attorney-client privilege she may be otherwise entitled to by prosecuting her complaint and testifying, on the record, against her former attorney in the state grievance hearings, the transcript and record of which is available to the public. The defendant argues that at the hearings regarding whether Farrell failed in his professional duties of adequate communication and CT Page 4073 due diligence both the plaintiff and Farrell testified to matters that went to the heart of their attorney-client relationship. Their testimonies detailed their communications with regard to the preparation of discovery response, analysis of liability and damage issues, settlement positions, and the eventual breakup of their attorney-client relationship.
He continues by asserting that the testimony given by the plaintiff and Farrell has a direct bearing on the defense: that at the hearings regarding his alleged lack of communication and due diligence, Farrell alleged in narration or cross-examination of the plaintiff that he had numerous telephone communications with the plaintiff regarding his reservations and reluctance to represent her; that she "wanted to perjure herself in her discovery information," some of her injuries alleged in the present case may be an aggravation of a preexisting injury concealed from him, and some of her medical bills did not appear to be "related strictly to this particular accident";[2] that her injuries may be the direct result of her overweight and that her claim against the defendant may lack credibility;[3] that she failed to provide him with adequate information regarding her preexisting injuries;[4] and that some of her damages from loss of earnings may be in fact caused by her discharge by her employer due to excessive absenteeism.[5]
"Except as otherwise required by the constitution of the United States, the constitution of this state, the General Statutes or the Practice Book, privilege shall be governed by the principles of the common law." Connecticut Code of Evidence § 5-1.
"The attorney-client privilege applies to communications: (1) made by a client; (2) to his or her attorney; (3) for the purpose of obtaining legal advice; (4) with the intent that the communication be kept confidential." Pagano v. Ippoliti,245 Conn, 640, 649 (1998). "In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." Metropolitan Life Ins. Co. v. Aetna Casualty SuretyCo., 249 Conn. 36, 52 (1999). In the seminal case of UnitedStates v. United Shoe Machinery Corp. , 89 F. Sup. 357, 358-59 (D. Mass. 1950), Judge Wyzanski stated the conditions under which the attorney-client privilege is applicable: "The privilege applies only if(1) the asserted holder of the privilege is or sought to CT Page 4074 become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." United States v. United ShoeMachinery Corp. , supra.
However, "the attorney-client privilege is strictly construed because it `tends to prevent a full disclosure of the truth in court. . . .' Turner's Appeal, 72 Conn. 305, 318 (1899)." Ullmann v. State, 230 Conn. 698, 710-11 (1994). "[S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures — necessary to obtain informed legal advice — which might not have been made absent the privilege." (Emphasis in original; internal quotation marks omitted.) Ullmann v. State, supra, 713.
"A client may . . . by his actions impliedly waive the privilege or consent to disclosure." "[I]t is the client's responsibility to insure continued confidentiality of his communications." In re Von Bulow, 828 F.2d 94, 101 (2d Cir. 1987). "The power to waive the attorney-client privilege rests with the client or with his attorney acting with his authority. C. McCormick, Evidence (4th Ed. 1992) § 93; see also Doyle v.Reeves, 112 Conn. 521, 523 (1931) (communications relevant to legal advice privileged until client waives protection). . . . [O]nce the confidence protected has been breached, the privilege has no valid `continuing office to perform." In re Von Bulow,
supra; Gebbie v. Cadle Co., 49 Conn. App. 265, 274 (1998).
"Statements made in the presence of a third party . . . are usually not privileged because there is no reasonable expectation of confidentiality." (Internal quotation marks omitted.) Ullmannv. State, supra, 711; see also Westinghouse Electric Corp. v.Republic of the Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991) ("it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived"); In re Grand Jury Proceedings Oct. 12, 1995,78 F.3d 251, 254 (6th Cir. 1996) (mere fact of disclosure of specific CT Page 4075 confidential information to third party constitutes waiver; form and purpose of disclosure irrelevant); United States v.Massachusetts Institute of Technology, 129 F.3d 681, 684, 686-87
(1st Cir. 1997) (noting that federal courts have generally held that "any voluntary disclosure outside the magic circle constitutes waiver," the circle including "secretaries, interpreters, counsel for a cooperating co-defendant, a parent present when a child consults a lawyer." Courts have generally been unwilling to make new exceptions.
In addition, "[t]he privilege protects only confidential communications of the client to the attorney," or "client communications," (Emphasis in original.) Industrial Clearinghousev. Browning Manufacturing Division of Emerson Electric Co.,953 F.2d 1004, 1007 (3d Cir. 1992). "A communication from an attorney to a client, in contrast to a communication from a client to an attorney, is normally not within the privilege, unless the attorney's statement directly or indirectly reveals confidential information disclosed to the attorney by the client, or is `inextricably linked' with the giving of legal advice." (Emphasis in original.) Ullmann v. State, supra. "[The attorney-client privilege] does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney." (Internal quotation marks omitted.)Industrial Clearinghouse v. Browning Manufacturing Division ofEmerson Electric Co., supra.
In In re Grand Jury Proceedings Oct. 12, 1995, supra, 252-53, the court of appeals affirmed the district court's holding that the owner and president of a laboratory had waived the laboratory's attorney-client privilege by "revealing the substance of their attorney's advice" when they told two government investigators that they had given "a detailed description of the marketing plan" to a Medicaid attorney, and that the attorney had "no problem" with several "specific elements of the plan." In the Gebbie case, involving an action for specific performance of a mortgage contract, the plaintiff's attorney, Block, had earlier testified in a pretrial deposition, as to the plaintiff's understanding of the contract subject matter. Gebbie v. Cadle Co., supra. At trial, the defendant called the plaintiff's attorney to testify as to the subject matter. "The plaintiff objected to Block's testimony in any form, asserting that he would not waive his attorney-client privilege. . . . In response, the defendant argued that the privilege had already been waived by the client's failure to CT Page 4076 assert it during the deposition and may not be resurrected." The Appellate Court agreed with the defendant that because the plaintiff's attorney "answered the same question, without objection, during his pretrial deposition, the attorney-client privilege had been waived and, therefore, he could not invoke the privilege as a shield to the questioning during trial." The court concluded that even though the question posed to the plaintiff's lawyer "went to the heart of the communication between the client and attorney," "the privilege was no longer in effect" because it had been "previously waived." Gebbie v. Cadle Co., supra, 273-274.
By contrast, some courts have ruled that a party has not waived its attorney client privilege where the disclosure is unspecific or unsubstantial. In United States v. White, 887 F.2d 267, 270-71
(D.C. Cir. 1989), the court ruled that one of the defendants had not waived his attorney-client privilege when he told government investigators that his attorneys "had thoroughly reviewed the decision . . . after . . . looking at the matter from nine different ways." The court called the defendant's discussion with the investigators about his lawyer's advice an "undetailed assertion." It held that "[a] general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege."In In re Dayco Corp. Derivative Securities Litigation,99 F.R.D. 616, 619 (S.D. Ohio 1983), the court held that the defendant corporation had not waived its attorney-client privilege when its special review committee released the findings of a report, because it "did not release a `significant part'" of the report and it "did not summarize evidence found in the report. . . ." InDayco, "[n]either the facts which led to [the] conclusions, nor the Report itself, were released." See also In re Grand JuryProceedings Oct. 12, 1995, supra, 78 F.3d 254 ("Unlike the litigants in White and Dayco, the owner and president of the laboratory . . . did not merely assert that their attorney had looked into the matter; they told the investigators that they had described the specific programs in detail and that the attorney approved some parts of the plan and recommended they discontinue other parts.").
"The `at issue,' or implied waiver, exception [to the attorney-client relationship] is invoked . . . when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regardingportions of the attorney-client communication, or specificallyCT Page 4077places at issue, in some other manner, the attorney-clientrelationship. In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." (Emphasis added; citations omitted.) Metropolitan Life Ins. Co. v. Aetna Casualty Surety Co., supra, 52-53; see also Kantaris v. Kantaris,169 N.W.2d 824, 830 (Iowa 1969) (testimony concerning attorney-client communication waived privilege). "[I]t has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. Hunt v. Blackburn, 128 U.S. 464, 470-71, 9 S.Ct. 125, 127,32 L.Ed. 488 (1888)." In re Von Bulow, supra, 101-102; see alsoBeckett v. State, 355 A.2d 515, 521 (Md.Ct.Spec.App. 1976) (client's decision to call attorney as witness waived attorney-client privilege); International Tel. Tel. Corp. v.United Tel. Co. of Florida, 60 F.R.D. 177, 185-86 (M.D. Fla. 1973) ("if the client or his attorney at his instance takes the stand and testifies to privileged communications in part this is a waiver as to the remainder . . . about the same subject");Industrial Clearinghouse v. Browning Manufacturing Division ofEmerson Electric Co., supra, ("if a complaint against an attorney, or the attorney's response or testimony in the malpractice case, reveals confidential client communications, the client waives the privilege as to the subject matter of the disclosed communications"). "The confidentiality of a client's communications may be compromised either through the publication of evidence of attorney statements or documents that disclose the client's confidential communications." Industrial Clearinghousev. Browning Manufacturing Division of Emerson Electric Co.,
supra.
Fairness concerns underlie courts' holding that voluntary disclosure of once privileged communications constitutes waiver of the attorney-client privilege as to the disclosed communications. "Because the attorney-client privilege inhibits the truth-finding process, it has been narrowly construed . . . and courts have been vigilant to preserve litigants from converting the privilege into a tool for selective disclosure.See [8 J. Wigmore, Evidence] § 2327; United States v. Woodall,438 F.2d 1317 (5th Cir. 1970) (en banc), cert. denied, 403 U.S. 933,91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); In re Penn CentralCommercial Paper Litigation, 61 F.R.D. 453, 464 (S.D.N.Y. 1973);Green v. Grapo, 181 Mass. 55, 62 N.E. 956, 959 (1902) (Holmes, CT Page 4078 J.) (`the privacy for the sake of which the privilege was created was gone by the appellant's own consent, and the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice').
The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." "[T]he attorney client privilege should be available only at the traditional price: a litigant who wishes to assert confidentiality must maintain genuine confidentiality." Permian Corp. v. United States,665 F.2d 1214, 1219-1222 (D.C. Cir, 1981). "A client cannot waive that privilege in circumstances where disclosure might be beneficial while maintaining it in other circumstances where nondisclosure would be beneficial," In re Subpoenas Duces Tecum,738 F.2d 1367, 1370 (D.C. Cir. 1984); see also In re von Bulow, supra.
Primarily out of concerns for fairness, a vast majority of federal courts have rejected, refused or declined to follow, the "selective waiver"[6] doctrine fashioned by the Eighth Circuit in Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 611
(8th Cir. 1977) (en banc). See United States v. MassachusettsInstitute of Technology, 129 F.3d 681 (1st Cir. 1997); In reSteinhardt Partners, 9 F.3d 230 (2d Cir. 1993); WestinghouseElectric Corp. v. Republic of the Philippines, 951 F.2d 1414 (3d Cir. 1991); In re Weiss, 596 F.2d 1185 (4th Cir. 1979); In reMartin Marietta Corp. , 856 F.2d 619 (9th Cir. 1988), cert. denied, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989);Permian Corp. v. United States, supra, 665 F.2d 1214; In reSealed Case, 676 F.2d 793 (D.C. Cir. 1982); In re Subpoena DucesTecum, supra; Genentech, Inc. v. United States InternationalTrade Commission, 122 F.3d 1409 (Fed. Cir. 1997). Under the "selective waiver" theory, a client who has disclosed privileged communications to one person may, in certain circumstances, continue to assert the privilege against other persons. In Diversified, the Eighth Circuit held that the disclosure of protected materials to the Securities and Exchange Commission during the course of a formal investigation constituted only a selective waiver of the privilege, and, consequently, the materials were not subject to discovery in subsequent civil litigation. See Diversified Industries, Inc. v. Meredith, supra.[7] In expanding its departure from traditional waiver CT Page 4079 doctrine, the court assumed that a contrary holding would discourage cooperation with government investigators; a rationale thoroughly rejected by the D.C. Circuit in Permian Corp. v.United States, supra, 1220-22.
As to the scope of waiver, specifically, whether waiver of disclosed communications extends to the subject matter areas related to the disclosed communications, the views of the Sixth and the Second Circuits are representative. In In re Grand JuryProceedings Oct. 12, 1995, supra, 255-56, the Sixth Circuit declines to adopt a blanket holding that voluntary disclosure of the content of a privileged communication constitutes a waiver of the privilege as to all other such communication on the same subject matter. The court provides two reasons. First, because "subject matter can be defined broadly or narrowly," it is inappropriate to adopt a blanket approach. Id. Second, the court "must be guided by fairness concerns" in determining whether a specific disclosure amounts to a complete disclosure. Id., citingIn re Dayco Corp. Derivative Securities Litigation, supra, 99 ("Generally, waiver of a privilege occurs when actions by the holder would make it unfair to insist that the privilege still exists.") (emphasis added); In re Von Bulow, supra, ("Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication — one not subsequently used by the client in a judicial proceeding to his adversary's prejudice — does not waive the privilege as to the undisclosed portions of the communications.") (emphasis added).
The Second Circuit holds in In re Von Bulow, supra, 103: "Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak. But related matters not so disclosed remain confidential. Although it is true that disclosures in the public arena may be `one-sided' or `misleading,' so long as such disclosures are and remain extrajudicial, there is no legal prejudice that warrants a broad court imposed subject matter waiver. The reason is that disclosures made in public rather than in court — even if selective — create no risk of legal prejudice until put at issue in the litigation by the privilege-holder." (Emphasis in original.)
It should be noted, first, that even if the attorney-client privilege were otherwise applicable in this case, not all the communications between the plaintiff and Farrell would be CT Page 4080 protected by the privilege. That is because only those communications made in the course of obtaining and giving legal advice and with the intent that the communications be kept confidential are privileged. See Pagano v. Ippoliti, supra. "The burden rests on the person invoking the privilege to establish the elements required for its application." State v. Hanna,150 Conn. 457, 466 (1963); and Turner's Appeal, supra, 317. "A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice." Statev. Ullmann, supra, 713. Even where the attorney-client privilege is not deemed to have been waived, "[a]n attorney does not have a privilege not to testify against his client" on matters not inextricably linked to the giving of legal advice. See Ullmann v.State, supra, 712 ("The fact that an attorney may not disclose privileged communications between himself and his client does not affect his capacity and his duty to testify as to other matters when called on to do so."); Gebbie v. Cadle Co., supra, 274-75 ("We do not take issue with the calling of [the plaintiff's attorney] to be deposed per se because it is the duty of a lawyer to testify as to other matters when called to do so.") (internal quotation marks omitted). However, "courts have been reluctant to allow attorneys to be called as witnesses in trials in which they are advocates." Ullmann v. State, supra, 716-18 n. 15. The judicial antipathy also applies to testimony by a party's former attorney. Courts therefore balance the need for the client to have confidence in seeking legal advice and for the fact-finder to get the truth by qualifying an attorney's obligation to testify for his adversary to matters of reasonable necessity.Loomis v. Norman Printers Co., 81 Conn. 343, 350 (1908).
Because "[n]ot every communication between attorney and client falls within the privilege," which protects only such disclosures as are necessary to obtain "informed legal advice"; Ullmann v.State, supra, 713; the plaintiff in this case needs to distinguish communications made in obtaining and giving legal advice and those that were not so made in order to meet her burden as claimant of the privilege to establish the elements required for its application. See State v. Hanna, supra. Since Farrell was also the plaintiff's brother during the course of their attorney-client relationship, he could have acquired information regarding the plaintiff's physical conditions and preexisting injuries by observation or non-privileged communication, which was not derived from their attorney-client relationship. Such information or communications not necessary to CT Page 4081 obtain informed legal advice and with no expectation of confidentiality are not privileged. See Ullmann v. State, supra. Having asserted a blanket privilege claim to all her communications with Farrell, the plaintiff has failed to meet her burden of distinguishing communications made strictly for the purpose of obtaining legal advice from those made outside the attorney-client relationship. She has failed, therefore, to establish the elements required for the application of the privilege.
However, even under the assumption that all the communications disclosed at the state grievance hearings are otherwise privileged, the plaintiff has waived the privilege as to those disclosed communications because the disclosure by both parties was made on the record and their testimonies have been published in the three volumes of transcripts attached to the defendant's memorandum of law. See Metropolitan Life Ins. Co. v. AetnaCasualty Surety Co., supra, 53 (party waives privilege when she "voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship"); Ullmann v. State, supra, (no privilege if no expectation of confidentiality);Gebbie v. Cadle Co., supra, (plaintiff could no longer invoke privilege as shield at trial after he raised no objection and allowed his attorney to testify at pretrial deposition, having thereby waived privilege); In re Von Bulow, supra, ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential."); In re Grand JuryProceedings Oct. 12, 1995, supra, (mere disclosure of confidential information to third party constitutes waiver; form and purpose of disclosure irrelevant; finding waiver where disclosure was specific, detailed or substantial); IndustrialClearinghouse v. Browning Manufacturing Division of EmersonElectric Co., supra, (client waives privilege as to subject matter of disclosed information if complaint against attorney and attorney's response or testimony in separate malpractice action reveal confidential client communications).
The communications disclosed at the grievance hearings were substantial, detailed and specific regarding the merits and strategies of the plaintiff's personal injury case. The disclosed communications go to the heart of the attorney-client relationship between the plaintiff and Farrell. They are also essential to the defense, especially those on the plaintiff's preexisting injuries, her falsely claimed medical bills, and her CT Page 4082 intention to perjure herself as alleged by Farrell. Once the plaintiff has publicly breached the attorney-client privilege and forced Farrell to testify as to the detailed and substantial confidences otherwise protected by the privilege, and the disclosed communications in the form of transcripts are openly available to the public, "the privilege has no valid continuing office to perform." (Internal quotation marks omitted.) SeeGebbie v. Cadle Co., supra.
The court also finds waiver for fairness reasons. The plaintiff should not be permitted to "pick and choose among [her] opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to the communications whose confidentiality [she] has already compromised for [her] own benefit." Permian Corp. v.United States, supra, 1219; see also In re Subpoena Duces Tecum, supra, ("A client cannot waive that privilege in circumstances where disclosure might be beneficial while maintaining it in other circumstances where nondisclosure would be beneficial.");In re Von Bulow, supra, ("it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut").
Even the "selective waiver" theory fashioned by the Eighth Circuit in Diversified Industries, Inc. v. Meredith, supra, which other federal courts of appeals have largely rejected or declined to follow; see United States v. Massachusetts Institute ofTechnology, 957 F. Sup. 301, 304 (D. Mass. 1997); which is not applicable to this case because Diversified involves an entirely different fact pattern and rationale. The court concluded inDiversified that because the corporate defendant voluntarily "disclosed these documents in a separate and nonpublic SEC investigation . . . only a limited waiver of the privilege occurred." (Emphasis added.) Diversified Industries, Inc. v.Meredith, supra, 572. By contrast, the plaintiff in the present case knowingly disclosed communications on the record that is accessible to the public. In addition, the policy concerns inDiversified (namely, a contrary holding would discourage cooperation with government investigators); see id.; are not present in this case because the plaintiff had not voluntarily disclosed any information to the government in connection with a government investigation of herself. CT Page 4083
In comparison, in a case somewhat similar to the present one, in which the defendant corporation had sued its former counsel in a separate malpractice action and then claimed the protection of attorney-client privilege in the unrelated contract dispute case, the Fifth Circuit opines in Industrial Clearinghouse, Inc. v.Browning Manufacturing Division, supra, that "if a complaint against an attorney, or the attorney's response or testimony in the malpractice case, reveals confidential client communications, the client waives the privilege as to the subject matter of the disclosed communications."[8]
As to the scope of waiver, it is limited to what the plaintiff and Farrell have actually disclosed on the record in the grievance hearings unless it would be unfair not to extend waiver to related areas where incompleteness of disclosure would be used by the plaintiff in the present case to the defendant's disadvantage. See In re Grand Jury Proceeding Oct. 12, 1995, supra, 256; In re Von Bulow, supra. The court should determine the issue of extending waiver to related areas on an instance-by-instance basis, guided by fairness principles in deciding whether a specific disclosure amounts to a complete disclosure. See In re Grand Jury Proceeding Oct. 12, 1995, supra, 256.
The plaintiff also claims work product privilege to resist deposition of Farrell, arguing alternatively that the communications between her and Farrell disclosed at the grievance hearings are Farrell's work product. "The work product rule protects an attorney's interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible items. . . . Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation." (Citations omitted; internal quotation marks omitted.) Ullmann v. State, supra; see also United Statesv. Nobles, 422 U.S. 225, 237, 95 S.Ct. 2160, 45 L.Ed.2d 141
(1975). "The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes." "[T]he doctrine grants counsel an opportunity to think or prepare a client's case without fear of intrusion by an adversary." (Internal quotation marks omitted.) In reSteinhardt Partners, supra, 234.
However, "[o]nce a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for CT Page 4084 the privilege disappears. Courts therefore accept the waiver doctrine as a limitation on work product protection. The waiver doctrine provides that voluntary disclosure of work product to anadversary waives the privilege as to other parties." (Emphasis added.) In re Steinhardt Partners, supra, 235. A party's "conscious disregard of the possibility that an adversary would gain access to the [work-product] material" waives the protection of the work product doctrine. (Internal quotation marks omitted.)Westinghouse Electric Corp. v. Republic of the Philippines, supra, 1428, citing therein In re John Doe, 662 F.2d 1073, 1081
(4th Cir. 1981). In circumstances where a party cannot reasonably expect to limit the future use of the otherwise protected material, and discloses work product materials, she waives the work product privilege. Westinghouse Electric Corp. v.Republic of the Philippines, supra.
A party's "unilateral testimonial use of work-product materials" is like her electing "to testify on [her] own behalf and thereafter assert [her] Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination," both tactics being equally impermissible. United States v. Nobles, supra, 239-40. "Fairness and consistency require that appellants not be allowed to gain the substantial advantages accruing to voluntary disclosure of work product to one adversary . . . while being able to maintain another advantage inherent in protecting that same work product from other adversaries." Such "selective disclosure" is "often spurred by considerations of self-interest." In re SubpoenasDuces Tecum, supra.
Farrell's statements, correspondence, mental impressions, personal beliefs, briefs and memoranda conducted or formed with a view to the plaintiff's pending personal injury action may qualify as Farrell's work product in that action. See Ullmann v.State, supra. However, the plaintiff has waived any protection from discovery or deposition she may otherwise have under the work product doctrine when she disclosed Farrell's work product on record at the hearings because of her "conscious disregard of the possibility that an adversary would gain access to the [work product] material" in circumstances where she "[could not] reasonably expect to limit the future use of the otherwise protected material." See Westinghouse Electric Corp. v. Republicof the Philippines, supra. Because the testimony by both the plaintiff and Farrell on the record, and accessible to the public, allows the plaintiff's adversaries to share the otherwise CT Page 4085 privileged work product, and the defendant has actually acquired the disclosed work product, the plaintiff has waived any protection from discovery or deposition with regard to the disclosed work product. If the plaintiff's adversaries "enjoy free access" to her former attorney's thought processes, "the logic behind the work product doctrine" is no longer tenable and the plaintiff is not entitled to the protection afforded by the doctrine. By publicly disclosing her attorney's work product in connection with her pending case, allowing her adversaries, including Farrell and the defendant, to share the otherwise privileged Farrell's thought processes, "the need for the privilege disappears." See In re Steinhardt Partners, supra.
In addition, fairness principles require that the plaintiff here "not be allowed to gain the substantial advantage accruing to voluntary disclosure of work product to one adversary . . . while being able to maintain another advantage inherent in protecting that same work product from other adversaries." See Inre Subpoenas Duces Tecum, supra. Having voluntarily disclosed otherwise protected work product to her adversaries, for whatever advantages or self-interest accruing to her action against her attorney, the plaintiff "can no more advance the work product doctrine to sustain a unilateral testimonial use of work-product materials than [she] could elect to testify in [her] behalf and thereafter assert [her] Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination." See United States v. Nobles, supra, 239-40.
The plaintiff has also made a motion for a protective order, presumably under Practice Book § 13-5, which provides, inter alia, that "[u]pon motion by a party from whom discovery is sought, andfor good cause shown, the judicial authority may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. . . ." (Emphasis added.)
The language of § 13-5 "indicates that a protective order functions only to protect a party from being deposed." (Emphasis added.) Cahn v. Cahn, 26 Conn. App. 720, 727, 603 A.2d 759
(1992), aff'd, 225 Conn. 666, 626 A.2d 296 (1993). Here, the defendant seeks to take the deposition of Farrell, a nonparty in the present action, and Farrell, from whom discovery is sought, has neither made a motion to quash nor a motion for a protective order. It seems that the plaintiff does not have standing to move CT Page 4086 for a protective order under the Practice Book.
Nevertheless, the Appellate Court in Cahn ruled that a motion for protective order filed by the plaintiff to prevent the deposition of three nonparty witnesses for the defendant, because of "undue burden" on the plaintiff of having to travel to New York to attend a deposition there, was proper even in light of the language of Practice Book § 13-5. The court reasoned: "The basis for the protective order in this case was to protect the plaintiff from the `undue burden' of having to attend a deposition in New York, which is a valid reason under Practice Book [§ 13-5]. Although the discovery being sought by the defendant was not from the plaintiff, the protective order was necessary to protect a party's interest." The Cahn court also noted that the Supreme Court in Lougee v. Grinnell,216 Conn. 483, 487 n. 3 (1990), "apparently followed rule 26(c) of the Federal Rules of Civil Procedure, which provides for protective orders for parties and non parties" in reviewing a nonparty's attempt to obtain a protective order from being deposed in Connecticut for a case arising out of Texas. Cahn v. Cahn, supra.
However, even if the plaintiff here has standing to move for a protective order, she bears the burden of showing good cause why a protective order should be issued. Practice Book § 13-5; Babcockv. Bridgeport Hospital, 251 Conn. 790, 848-49 (1999), citingBallard v. Herzke, 924 S.W.2d 652, 658 (Tenn. 1996) (party seeking protective order bears burden of justifying confidentiality of each and every document sought to be protected); Sabanosh v. Durant, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 054525 (December 17, 1997, Flynn, J.) (mandating showing of good cause for protective order to issue). The plaintiff has failed to meet that burden. Because the testimonies by both the plaintiff and Farrell are publicly available, the plaintiff has waived any privilege she may otherwise have under either the attorney-client privilege or the work product doctrine. Therefore, it is pointless for her to seek a protective order for confidentiality where there is none. See Lathouris v. Slavitt, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 169137 (October 13, 1999, D'Andrea, J.) (denying motion for protective order for defendants' failure to show good cause). In addition, "[p]rotective orders have been denied where the information sought is material to the litigation." Here, the information sought is clearly material to the litigation because the information with regard to her alleged failure to report CT Page 4087 preexisting injuries, her attempt to perjure herself in her discovery information, her submission of false medical bills, and her false claim of damages from loss of earning is essential to the defense. The motion for a protective order cannot, therefore, be favorably entertained.
The motion for protective order, and the motion to quash the notice of deposition are, accordingly, denied.
Moraghan, J.