**In re GRAND JURY PROCEEDINGS OCTOBER 12, 1995.**

**No. 95–4166.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 5, 1996.

Decided March 14, 1996.

---

5. Ziebart does not seek attorney's fees or costs arising out of the prosecution of its federal suit.

Steven D. Bell (argued and briefed), Timothy J. Downing, Ulmer & Berne, Cleveland, OH, for petitioner.

Ann C. Rowland, U.S. Atty. (argued and briefed), Office of U.S. Atty., Organized Crime Strike Force Unit, Cleveland, OH, for respondent.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges, and GILMORE, District Judge.*

KENNEDY, Circuit Judge.

In this case, we consider an appeal from a District Court order compelling an attorney to testify before the grand jury as to her legal advice to the owner and president of a laboratory regarding its marketing plan to secure business from nursing homes. The District Court held that the owner and president had waived the laboratory's attorney-client privilege by revealing the substance of their attorney's advice when they told two government investigators that they had given a detailed description of the marketing plan to a Medicare attorney, and that the attorney had "no problem" with several elements of the plan. The District Court also held that by waiving their privilege with respect to specific elements of the marketing plan, the owner and president had waived the attorney-client privilege with respect to the attorney's advice on the entire marketing plan,

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

even though they told the investigators nothing about the attorney's advice on the remaining elements of the plan.

We affirm the District Court's ruling that the attorney may be compelled to testify before the grand jury: the laboratory's owner and president waived its privilege with respect to the attorney's advice regarding specific elements of the marketing plan by disclosing that advice to the government investigators. But we reverse the District Court's ruling compelling the attorney to answer questions about her advice on the remaining elements of the plan, for it is not clear whether those elements of the plan involve the same subject matter.

## I

In an effort to investigate allegations that a private laboratory was improperly inducing nursing homes to give it business and seeking reimbursement from Medicare for tests performed by nursing home personnel, two government investigators met with its owner and president. Shortly after the meeting began, the owner and president informed the agents that they had met with a Washington, D.C. attorney who specializes in Medicare law, and they told the investigators the attorney's name. They told the agents that they brought their twenty-four point marketing plan to the attorney and that they described the various elements of the plan to her in detail.

The agents inquired into allegations that the laboratory had been providing nursing homes free products such as glucose strips, lancets, Sharps disposal containers, and glucometers, and that the lab was billing Medicare for tests being done by nursing home personnel.

The owner and president told the investigators that their attorney was concerned that providing free Sharps needle disposal containers could constitute an illegal inducement or kickback. But, the president noted, the attorney had no problem with the laboratory billing Medicare for tests done by nursing home personnel or with providing nursing homes free glucose testers and lancets. When asked by the agents about the apparent inconsistency between the lawyer's advice regarding free Sharps disposal containers and free glucose testers, the president responded, "That's the advice I had of the attorney at the time."

The District Court held that the owner and president had waived the attorney-client privilege by voluntarily disclosing the substance of their attorney's advice to the government agents. The District Court also held that "the government's motion to compel is granted to the extent of the legal advice and documents relating to [the laboratory's] marketing plan." Since the attorney had examined and advised the owner and president with respect to all twenty-four points of the marketing plan, the District Court's order appears to allow the government to compel the attorney to testify before the grand jury as to her advice on the entire marketing plan, not just with respect to the lab's method of billing or to providing nursing homes free glucose strips, lancets, Sharps disposal containers, and glucometers.

## II

■ The Sixth Circuit has not adopted a particular standard of review to apply to District Court decisions regarding waiver of attorney-client privilege. Moreover, our sister Circuits appear to be split as to the appropriate level of scrutiny. *Compare United States v. Bilzerian,* 926 F.2d 1285, 1293 (2d Cir.1991) (reviewing District Court finding that privilege was waived for abuse of discretion) *with United States v. Mendelsohn,* 896 F.2d 1183, 1188 (9th Cir.1990) (reviewing District Court's holding that privilege had been waived *de novo* ).

We must answer two questions in this case: whether the owner and president's discussion with the government agents was sufficient to waive the attorney-client privilege with respect to the attorney's advice on providing free supplies and on submitting bills to Medicare; and, if so, whether this waiver as to some of the marketing plan was sufficient to waive the attorney-client privilege with respect to the attorney's advice on the rest of the plan. Because we believe these are legal questions, not questions of fact, we shall review the District Court's conclusions

*de novo. See City Mgmt. Corp. v. United States Chem. Corp., Inc.,* 43 F.3d 244, 250 (6th Cir.1994).

## A

 We first consider whether the owner and president waived the attorney-client privilege as to the attorney's advice on providing nursing homes free supplies to test patients' insulin levels and with billing Medicare for tests being performed by nursing home personnel. The purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). But because the privilege operates to reduce the amount of information discoverable during the course of a lawsuit, it is narrowly construed. *In re Grand Jury Investigation No. 83-2-35,* 723 F.2d 447, 451 (6th Cir.1983). By voluntarily disclosing her attorney's advice to a third party, for example, a client is held to have waived the privilege because the disclosure runs counter to the notion of confidentiality. *See Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1424 (3rd Cir.1991) ("[V]oluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege.").

Attorneys for the laboratory make two arguments in support of their claim that the owner and president did not waive the attorney-client privilege during the meeting with the government investigators. First, they argue that the privilege was not waived because the owner and president did not reveal the substance of their attorney's advice, relying on two cases: *United States v. White,* 887 F.2d 267 (D.C.Cir.1989) and *In re Dayco Corp. Derivative Securities Litigation,* 99 F.R.D. 616 (S.D.Ohio 1983).

But these cases were decided on the basis of significantly different facts. In *White,* the D.C. Circuit ruled that one of the defendants did not waive his attorney-client privilege when he told government investigators that his attorneys "had thoroughly reviewed the decision ... after ... looking at the matter from nine different ways." 887 F.2d at 270–71. The Court called the defendant's discussion with the investigators about his lawyer's advice an "undetailed assertion." *Id.* at 271. It held that "[a] general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege." *Id.* Likewise, in *Dayco,* the District Court held that the defendant corporation had not waived its attorney-client privilege when its special review committee released the findings of a report, because it "did not release a 'significant part'" of the report and it "did not summarize evidence found in the report...." 99 F.R.D. at 619. In *Dayco,* "[n]either the facts which led to [the] conclusions, nor the Report itself, were [sic] released." *Id.*

 Unlike the litigants in *White* and *Dayco,* the owner and president of the laboratory did discuss the substance of their attorney's advice. The owner and president did not merely assert that their attorney had looked into the matter; they told the investigators that they had described the specific programs in detail and that the attorney approved some parts of the plan and recommended they discontinue other parts. The information the owner and president gave to the investigators revealed their attorney's legal conclusions and the facts on which those conclusions were based. Moreover, by indicating that the attorney had told them that one element of the marketing plan—the provision of free Sharps disposal containers— could constitute an illegal inducement, the president and owner revealed both the legal conclusion and the reasoning behind the conclusion. Because the owner and president revealed a significant part of the attorney's advice, *White* and *Dayco* are factually distinguishable.

Attorneys for the laboratory also argue that the privilege was not waived because the owner and president were not asserting an advice of counsel defense during the meeting. This argument also fails. The president and owner waived the privilege because they disclosed once-privileged information to third parties. What form the disclosure took and what prompted the disclosure are irrelevant here. Thus, the District Court did not err in

holding that the attorney-client privilege was waived with respect to the attorney's advice on providing nursing homes free medical supplies to test patients' insulin levels and on submitting bills to Medicare for tests performed by nursing home personnel.

## B

Having concluded that the attorney-client privilege was waived as to specific elements of the marketing plan, we must now determine the scope of that waiver. The District Court appears to have held that the lab's disclosure of the attorney's advice on the specific marketing points waived the privilege as to the attorney's advice on the entire plan: "Therefore, the government's motion to compel is granted to the extent of legal advice and documents relating to [the laboratory's] marketing plan."

In support of the District Court's order, the Government argues that "[i]t is well established that voluntary disclosure of the content of a privileged communication constitutes a waiver of the privilege as to all other such communication on the same subject matter."[1] The government relies on several cases to support its claim that in view of the waiver on specific items of the marketing plan, the laboratory waived its privilege with respect to the rest of the plan. *See, e.g., United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982) ("Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter."); *In re Sealed Case,* 676 F.2d 793, 818 (D.C.Cir.1982) ("When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter...."); *Edwards v. Whitaker,* 868 F.Supp. 226, 229 (M.D.Tenn.1994) ("[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.").

However, these cases do not truly answer the question of the proper scope of the waiver, for they only inform us that waiver applies to the rest of the communications on the same subject matter. But subject matter can be defined narrowly or broadly. *In re Sealed Case,* 877 F.2d 976, 981 (D.C.Cir. 1989). Here subject matter could include the entire marketing plan, or it could include only plans about providing the glucose strips, lancets, Sharps disposal containers, and glucometers. To allow the government to compel the attorney to testify about her advice on the entire marketing plan, the District Court must have defined subject matter to include the entire marketing plan.

■ After reviewing the transcript of testimony offered by one of the government investigators who interviewed the laboratory's owner and president, we conclude that they probably did not divulge the substance of the attorney's advice on the entire marketing plan. They only informed the investigators about the attorney's advice on providing nursing homes free supplies to test patients' insulin levels and on billing Medicare for tests performed by nursing home personnel. Indeed, the Government's attorney repeatedly questioned the investigator about whether the owner and president had told the investigators anything about the attorney's advice with respect to the remaining twenty-two points of the plan. On each occasion, the investigator testified that the owner and president had not revealed anything about the attorney's advice regarding the remaining marketing points.

We do not have the marketing plan before us, and so we cannot know how advice on the specific points might be inextricably linked with advice on the entire twenty-four point marketing plan. But we do not believe that the owner and president's waiver of the privilege by divulging the attorney's advice on several specific items of the marketing plan necessarily constitutes waiver as to the attorney's advice on the entire plan. We are thus persuaded by the line of cases that try to

---

**1.** Appellants take the opposite position with equal certitude: "It is well-settled that even in situations where a waiver of the attorney-client privilege has occurred, the party asserting the privilege must only produce those documents which specifically refer to the matters actually disclosed."

make prudential distinctions between what was revealed and what remains privileged. *See, e.g., In re Sealed Case,* 877 F.2d 976, 981 (D.C.Cir.1989) (remanding district court decision finding company waived privilege on six documents by inadvertently disclosing one of the documents, because lower court "did not fully explain why the communications were related"); *United States v. (Under Seal),* 748 F.2d 871, 875 n. 7 (4th Cir.1984) ("If any of the non-privileged documents contain client communications not directly related to the published data, those communications, if otherwise privileged, must be removed by the reviewing court before the document may be produced."); *United States v. Cote,* 456 F.2d 142, 145 n. 4 (8th Cir.1972) (requiring in camera review of documents to protect information not already published, for "[t]oo broad an application of the rule of waiver requiring unlimited disclosure ... might tend to destroy the salutary purpose of the privilege"); *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 25 (9th Cir.1981) (finding waiver "only as to communications about the matter actually disclosed"); *Schenet v. Anderson,* 678 F.Supp. 1280, 1284 (E.D.Mich.1988) ("The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties.").

Accordingly, we reverse the District Court's order to the extent it allows the government to ask the attorney unlimited questions about her advice on the entire marketing plan. Instead, the government may ask questions that clearly pertain to the subject matter of the specific points on which a waiver did occur. The District Court will have to decide whether the remaining points in the marketing plan are truly the same subject matter as those in the specific marketing plan points on which there was a waiver and approve or disallow questions on that basis. Ultimately, the District Court may have to determine the scope of waiver on a question-by-question basis. In this regard, the District Court must be guided by fairness concerns. *See In re Dayco Corp. Derivative Securities Litigation,* 99 F.R.D. 616, 619 (S.D.Ohio 1983) ("Generally, waiver of a privilege occurs when actions by the holder would make it *unfair* to insist that the privilege still exists.") (emphasis added); *In*

*re Von Bulow,* 828 F.2d 94, 102 (2nd Cir. 1987) ("Applying the *fairness* doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication— one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communications.") (emphasis added).

### III

We therefore **AFFIRM** the District Court's order granting the government's motion to compel the laboratory's attorney to answer questions about her advice on providing nursing homes free supplies such as glucose strips, lancets, Sharps disposal containers, and glucometers and on billing Medicare for tests performed by nursing home personnel. However, we **REVERSE** the District Court's order allowing the government to compel the attorney to answer questions about her advice on the remainder of the marketing plan except to the extent the District Court finds that the questions involve the same subject matter as those specific points of the plan on which we held the privilege was actually waived or that the fairness doctrine requires further disclosure.

We **REMAND** the matter to the District Court for further proceedings consistent with this opinion.