### In re COLUMBIA/HCA HEALTHCARE CORPORATION Billing Practices Litigation

No. 3–98–MDL–1227.

United States District Court, M.D. Tennessee, Nashville Division.

April 13, 2000.

Jane Branstetter Stranch, Branstetter, Kilgore, Stranch & Jennings, Nashville, TN, Daniel O. Myers, James M. Hughes, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, Mitchell A. Toups, Weller, Green, McGown & Toups, Beaumont, TX, Richard M. Heimann, David Bruce Stellings, Erik L. Shawn, Lieff, Cabraser, Heimann &

Bernstein, New York City, for Cordula Boyson, Tennessee Laborers Health & Welfare Fund, Operating Engineers Local 312 Health & Welfare Fund, Board of Trustees of the Carpenters & Mill Wrights of Houston & Vicinity Welfare Trust Fund, Board of Trustees of the Texas Ironworkers' Health Benefit Plan, plaintiffs.

Peter L. Winik, Curtis P. Lu, Mary E. Britton, Lucy G. Clark, Latham & Watkins, Washington, DC, Robert Jackson Walker, W. Scott Sims, Walker, Bryant & Tipps, Nashville, TN, for Columbia/HCA Healthcare Corporation, defendants.

Gordon Ball, Law Offices of Gordon Ball, Knoxville, TN, for Charles Ferguson, Howard Dunford, Michael Turansky, Patricia Marsh, intervenors.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the plaintiffs' motion (filed January 14, 2000; Docket Entry No. 135) to compel Columbia/HCA to produce documents listed on its privilege logs that have already been produced to the United States government, their memorandum (Docket Entry No. 136) in support and the defendant's response (filed February 18, 2000; Docket Entry No. 141).[1]

The plaintiffs ask the Court to compel Columbia/HCA to provide documents on Columbia/HCA's privilege logs that Columbia/HCA previously provided to the Department of Justice during its investigation of Columbia/HCA for improper billing practices.[2] The plaintiffs contend that even if the documents would otherwise be protected from discovery by attorney-client privilege or the work product doctrine, the defendant has waived any such protection by producing the documents to the government.

---

1. On March 28, 2000, (Docket Entry No. 161) the Court solicited a response from the United States to the plaintiffs' motion to compel. On April 10, 2000, the government filed a statement (Docket Entry No. 168) in which did not state a legal opinion on the applicability of the limited waiver doctrine. The government expressed that it would prefer that the Court's ruling protect its ability to secure similar disclosures of privileged and protected documents in the future.

2. The documents at issue were created during special audits of Columbia/HCA's Medicare coding practices commissioned by Columbia/HCA's in-house counsel from 1995–1997.

Before it turned over the documents to the government, Columbia/HCA entered an agreement with the government that the production of documents did not constitute a waiver of attorney-client privilege or protection of the work product doctrine. Columbia/HCA claims that, because of their agreement, those documents are still protected by the attorney-client privilege or the work product doctrine and that the Court should not compel it to produce the documents to the plaintiffs. Accordingly, the question before the Court is whether Columbia/HCA waived any claim of attorney-client privilege or protection of work product with respect to documents it previously produced to the government.

The Court has jurisdiction over this case under federal question jurisdiction. 28 U.S.C. § 1331. Accordingly, questions of privilege in this case are to be determined under federal common law. *Reed v. Baxter,* 134 F.3d 351, 355 (6th Cir.1998) (citing Fed. R.Evid. 501).

## I.

### A. *Attorney–Client Privilege*

■ "While the purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys, the privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." *In re Grand Jury Proceedings October 12, 1995,* 78 F.3d 251, 254 (6th Cir.1996). The person asserting the privilege has the burden of establishing its existence. *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir.1999) (citing *In re Grand Jury Investigation No. 83-2-35,* 723 F.2d 447 (6th Cir.1983)). The privilege is generally considered waived if a client voluntarily reveals otherwise protected communications to third parties. *Id.* (citing *In re Grand Jury Proceedings Oct. 12, 1995,* 78 F.3d at 254). Moreover, while a client's intent to maintain a privilege is "ordinarily

necessary to continued protection, ... it is not sufficient." *United States v. Mass. Inst. of Tech.,* 129 F.3d 681, 684 (1st Cir.1997).

■ By adopting the selective waiver doctrine, the United States Court of Appeals for the Eighth Circuit made an exception to the general rule that when a client voluntarily reveals communications to a third party it waives the privilege. In *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1978), the Court held that when a client voluntarily reveals communications to a government entity during a government investigation, the waiver only applies to that government entity but not as to all other adversaries. In that case, the client voluntarily produced documents to the Securities and Exchange Commission during an SEC investigation. Finding that the client did not waive the attorney-client privilege with respect to the documents as to other adversaries, the Court reasoned that finding a complete waiver in that situation might discourage the cooperation of those subject to future government investigations. *Diversified Indus.,* 572 F.2d at 611. Since the Eighth Circuit's decision in *Diversified Industries,* the United States Courts of Appeals for the First, Second, Third, Fourth, Federal and D.C. Circuits have rejected the selective waiver doctrine.[3]

The United States Court of Appeals for the Sixth Circuit has neither accepted nor rejected the selective waiver doctrine. The Court acknowledged the doctrine in dicta in the case of *In re Perrigo,* 128 F.3d 430 (6th Cir.1997). The defendant insists that the Court's statement in that case that "some of the interests considered in *Diversified Industries* are similar to those in the instant case," indicates that the Court would view the adoption of the selective waiver doctrine favorably. *In re Perrigo,* 128 F.3d at 441 n. 9. However, this statement does not indicate whether the Court approved or disapproved the Eighth Circuit's holding in *Diversified Industries.* The Sixth Circuit did recognize

---

**3.** *See Massachusetts Inst. of Tech.,* 129 F.3d 681; *Genentech, Inc. v. United States Int'l Trade Comm'n,* 122 F.3d 1409, 1417 (Fed.Cir.1997); *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2nd Cir.1993); *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1424–26 (3rd

Cir.1991); *In re Weiss,* 596 F.2d 1185 (4th Cir. 1979); *In re Martin Marietta Corp.,* 856 F.2d 619, 623–24 (4th Cir.), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655., 104 L.Ed.2d 169 (1989); *Permian Corp. v. United States,* 665 F.2d 1214, 1220–21 (D.C.Cir.1981).

that "[c]ourts have been reluctant to extend that holding outside the facts of that case, reasoning that, under normal circumstances, waiver as to one party should be waiver to all." *Id.* Accordingly, the Court rejects the defendant's assertion that *In re Perrigo* is authority for the Sixth Circuit's favorable opinion of the doctrine of selective waiver.

The Court finds the reasoning of the First Circuit's rejection of the selective waiver doctrine instructive. In *United States v. Massachusetts Institute of Technology*, 129 F.3d 681, the Internal Revenue Service requested documents from MIT that MIT had previously disclosed to the Defense Contract Audit Agency.[4] MIT refused to provide the IRS with the documents, asserting the documents were protected by the attorney-client privilege and work product doctrine. The IRS petitioned the district court to compel disclosure. The district court held that the work product doctrine did not apply because the documents were not prepared in anticipation of litigation. It also held that the disclosure to the audit agency waived the attorney-client privilege. MIT appealed the court's ruling with respect to the waiver of attorney-client privilege.

Though MIT disclosed the documents to the audit agency, it argued that it intended to maintain the privilege and that the "regulations and practices [of the audit agency] offered MIT some reason to think that indiscriminate disclosure was unlikely." *Id.* at 683. However, the audit agency did not expressly agree not to disclose the contents of the documents as the government did in the instant case.

The First Circuit found that the question of privilege was governed by the principles of federal common law. *Id.* at 684 (citing Fed. R.Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989)). The Court determined that MIT's intent to maintain the privilege was not sufficient to prevent a waiver. It focused on the fact that the privilege has been nar-

rowly confined by courts to foster adequate access to evidence. It also recognized that it would be unfair for a client to be permitted to disclose information to one person while withholding it from another on the basis of privilege. *Id.* at 685. The Court also recognized that the Eighth Circuit had held that a selective waiver could exist where information was disclosed to a government agency to encourage "the frank exchange between attorney and client in future cases, wherever the client anticipates making a disclosure to at least one government agency." *Id.* It declined to adopt this reasoning, explaining:

> such agencies usually have means to secure the information they need and, if not, can seek legislation from Congress. By contrast, the safeguarding of the attorney-client relationship has largely been left to the courts, which have had a complete advantage in assessing consequences in this sphere.... the general principle that disclosure normally negates the privilege is worth maintaining. To maintain it here makes the law more predictable and certainly eases its administration. Following the Eighth Circuit's approach would require, at the very least, a new set of difficult line-drawing exercises that would consume time and increase uncertainty.

*Id.*

Likewise, the Second and D.C. Circuits rejected the selective waiver doctrine, in part on the basis that it would foster selective assertion of privilege, stating:

> the basis for attorney-client privilege is that frank communication between attorney and client will be fostered by confidentiality, and that the "privilege ceases when the client does not appear to have been desirous of secrecy .... Voluntary cooperation with government investigations may be a laudable activity, but it is hard to understand how such conduct improves the attorney client relationship." "The client cannot be permitted to choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiali-

4. The IRS was conducting an examination of MIT's tax exempt status. The Defense Contract Audit Agency "helps entities in the Department of Defense review contract performance to be sure that the government is not overcharged for services." *Massachusetts Inst. of Tech.*, 129 F.3d at 683. It reviewed MIT's records because MIT was a private contractor to the Department of Defense.

ty to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit."

*In re Steinhardt Partners, L.P.,* 9 F.3d at 235 (quoting *Permian Corp.,* 665 F.2d at 1220–21).

The Third Circuit applied this reasoning as well. *Westinghouse,* 951 F.2d at 1425. It also based its rejection on the fact that Congress considered adopting legislation to provide for selective waiver when the subject of an SEC investigation provides privileged information to the SEC but declined to do so. *Id.* (quoting *University of Pa. v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571, 582 (1990)).

The selective waiver doctrine has also been rejected because voluntary disclosures by corporations being investigated by the government are usually made for the benefit of the corporation and they generally do not refuse to cooperate with investigations based on the fear that a privilege will be lost against future adversaries. *In re Steinhardt Partners, L.P.,* 9 F.3d at 235 (citation omitted).

▆ The Court agrees with the reasoning of the First Circuit that intent to maintain a privilege is not sufficient. The determination of what constitutes a waiver is a legal question. Clients who wish to selectively disclose privileged documents and the entity to whom they wish to disclose the documents cannot negate a waiver simply by agreeing to do so. Further, the Court finds the reasoning of the other circuits that the doctrine of selective waiver is inconsistent with the purpose of the attorney-client privilege persuasive. Accordingly, the Court holds that even in the context of a government investigation, voluntary disclosure of privileged materials to the government constitutes a waiver of the attorney-client privilege to all other adversaries.

### B. *Work Product Doctrine*

▆ The work product doctrine is broader that the attorney-client privilege in that "the work product doctrine protects any documents prepared in anticipation of litigation by or for the attorney." *In re Antitrust*

*Grand Jury,* 805 F.2d 155, 163 (6th Cir.1986). The purpose of the work product doctrine is to allow an attorney the ability to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and protect [his] clients' interests." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). As the purpose of the work product doctrine is to prevent the client's adversary from gaining access to his attorney's work product, "most courts hold that to waive the protection of the work product doctrine, the disclosure must enable an adversary to gain access to the information." *Westinghouse,* 951 F.2d at 1428.

The Sixth Circuit has not addressed the question of whether protection under the work product doctrine is selectively waived by the disclosure of work product to a government agency during an investigation. The Third Circuit addressed this issue and rejected the selective waiver doctrine in the context of the claim of protection under the work product doctrine and the Court finds its reasoning instructive. *Westinghouse,* 951 F.2d at 1425. The Court recognized the strict construction of the work product doctrine and the fact that the work product is a qualified, rather than an absolute, protection. It found that after documents protected by the work product doctrine are disclosed to a third party, the client may only assert the doctrine's protection with respect to those documents "when the disclosure furthers the doctrine's goal." *Id.*

The Court further concluded that when the target of a government investigation discloses protected material to the government, it does so for its own benefit and that objective does not further the purpose of the work product doctrine. Therefore, such a disclosure constitutes a waiver of protection under the work product doctrine. The Court explained:

attorneys are still free to prepare their cases without fear of disclosure to an adversary as long as they and their clients refrain from making such disclosures themselves. Creating an exception for dis-

closures to government agencies may actually hinder the operation of the work product doctrine. If internal investigations are undertaken with an eye later to disclosing the results to a government agency, the outside counsel conducting the investigation may hesitate to pursue unfavorable information or legal theories about the corporation. Thus, allowing a party to preserve the doctrine's protection while disclosing work product to a government agency could actually discourage attorneys from fully preparing their cases.

*Id.* at 1429–30.

 Like Columbia/HCA, Westinghouse argued that disclosure to the government should not constitute a waiver of the work product doctrine because it had an agreement with the government that the disclosure would be confidential and would not constitute a waiver. The Court in Westinghouse indicated that when a party discloses work product with the reasonable expectation that it will not be given to an adversary, the work product doctrine may not be waived. *Id.* at 1430. However, giving work product to an adversary conflicts with the purpose of the work product doctrine and constitutes a waiver. *Id.* Accordingly, the Third Circuit found that whether Westinghouse had an agreement of confidentiality with the government was irrelevant to the question of waiver because it had disclosed work product to an adversary. *Id.*

Columbia/HCA does not contest that the government's investigation of its billing practices made the government its adversary. The Court finds that Columbia/HCA's disclosure of work product to the government was disclosure of work product to an adversary. Such disclosure contradicted the purpose of the protection of the work product doctrine. Accordingly, the Court finds that Columbia/HCA thereby waived any protection these documents had under the work product doctrine.

## II.

The Court finds that Columbia/HCA waived any protection from discovery under the attorney-client privilege or the work product doctrine for documents disclosed to the government by Columbia/HCA during the government's investigation of Columbia/HCA's billing practices. Accordingly, the Court shall grant the plaintiffs' motion (filed January 14, 2000; Docket Entry No. 135) to compel Columbia/HCA to produce documents listed on its privilege logs that have already been produced to the United States government.