**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**TEXAS HYDRAULICS, INC., Defendant.**

No. 1:06–CV–161.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Oct. 31, 2007.

Faye A. Williams, United States of America–EEOC, Memphis, TN, Steven W. Dills, Sally Ramsey, United States of America, Equal Employment Opportunity Commission, Nashville, TN, for Plaintiff.

Clinton P. Sanko, John C. Harrison, Baker, Donelson, Bearman, Caldwell & Berkowitz, Chattanooga, TN, for Defendant.

### *MEMORANDUM and ORDER*

SUSAN K. LEE, United States Magistrate Judge.

### I.  Introduction

Before the Court is the motion of Defendant, Texas Hydraulics, Inc. ("Defendant"), for an order compelling the production of certain documents withheld from production on the basis of a claim of privilege(s) by Plaintiff, Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") [Doc. No. 26].  Several memoranda, exhibits, an affidavit, and an amended privilege log have been filed in support of or in opposition to the motion [Doc. Nos. 27, 31, 32, 33, 34, 37, 38, 40], all of which have been carefully reviewed and fully considered by the Court.

A hearing was held on this motion on October 19, 2007.  Present at the hearing were: (1) attorney Steven W. Dills for Plaintiff and (2) attorneys John C. Harrison and Clinton P. Sanko for Defendant.  For the reasons stated herein, the motion will be **DENIED.**

### II.  Background

This action involves Defendant's termination of employee Keith Vogeler ("Vogeler").  Prior to his termination, Vogeler filed a charge of religious discrimination and retaliation against Defendant with the EEOC on February 2, 2005 (the "First Charge").  From February through September 2005, the EEOC conducted an investigation of the First Charge and ultimately determined it would not proceed against Defendant on the First Charge.  On September 15, 2005, the EEOC issued a dismissal and right to sue letter with regard to the First Charge.  Defendant subsequently terminated Vogeler on October 24, 2005.  Vogeler then filed another charge of discrimination with the EEOC on November 3, 2005 (the "Second Charge").  This action was filed on July 21, 2006.

### III.  Analysis

Defendant seeks to compel the documents withheld, in whole or in part, from production by the EEOC. These documents are listed on the amended privilege log by the following Bates stamp numbers:  341, 343, 344–48, 349, 351, 352, 356, 357, 366, 380, 391 [Doc. No. 33–2 at 1, 3–5].  It is undisputed that all of these documents relate to the First Charge.

In summary, Defendant asserts the EEOC put its conduct at issue by revealing its determination that the critical difference between the "no cause" dismissal of the First Charge and the filing of this action on the Second Charge is that Vogeler was terminated by Defendant with alleged malice or reckless indifference to Vogeler's rights.  Defendant argued that revealing this information waived any applicable privilege and created a need for discovery about the determination of the First Charge.  Specifically, Defendant asserted it:

> asked the EEOC to provide documentation regarding the determination of the First Charge and, after the EEOC objected,

[Defendant] explained its rationale for needing this information. First, the EEOC itself put this information at issue by factual allegation. Second, it is directly relevant to [Defendant's] state of mind in terminating Mr. Vogeler—the EEOC claims that [Defendant] acted with malicious intent.

[Doc. No. 27 at 5].

In response, the EEOC asserted production should not be compelled because the documents are being withheld under and subject to the deliberative process privilege and/or the attorney-client privilege [Doc. No. 33–2 at 3–5]. In reply, Defendant asserted the EEOC's privilege logs are too deficient to enable a determination as to whether claimed privileges apply [Doc. No. 27]. Further, Defendant again asserted if the claimed privileges apply, the attorney-client privilege has been waived and its need for the documents outweighs any deliberative process privilege [*id.*]. Finally, after the EEOC argued its investigator's actions did not amount to a waiver and were consistent with policy [Doc. No. 37], the Defendant argued the investigator actually violated the EEOC's internal policy when he told Vogeler his recommendation for the disposition of the First Charge [Doc. No. 38].

■ The party asserting a privilege to bar discovery bears the burden of establishing the privilege applies. *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir.1999) (attorney-client and work product privileges); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 294 (6th Cir.2002) (same); *Redland Soccer Club, Inc. v. Dep't of Army of United States,* 55 F.3d 827, 855 (3d Cir.1995) (deliberative process privilege). Although the EEOC opposed an *in camera* review of the documents at issue, an *in camera* review was properly conducted by the Court.[1] *See In re Antitrust Grand Jury,* 805 F.2d 155, 169 (6th Cir.1986) (holding district court erred in not conducting *in camera review* of documents to determine applicability of claimed privileges). The Court finds that the amended privilege log is adequate, especially in conjunction with the

*in camera review,* for purposes of determining the privilege issues before the Court.

## A. The Deliberative Process Privilege

■ "To be protected by the deliberative process privilege a government document must be both predecisional and deliberative." *Shafizadeh v. Bureau of Alcohol, Tobacco and Firearms,* No. 99–5727, 2000 WL 1175586, * 2 (6th Cir. Aug.10, 2000) (quoting *Schell v. United States Dep't of Health & Human Servs.,* 843 F.2d 933, 939 (6th Cir.1988); internal quotation marks omitted); *accord Norwood v. FAA,* 993 F.2d 570, 577 (6th Cir.1993). A document is "predecisional" when it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made" and "deliberative" if it is "the result of a consultative process." *Rugiero v. United States Dep't of Justice,* 257 F.3d 534, 550 (6th Cir. 2001), *cert. denied,* 534 U.S. 1134, 122 S.Ct. 1077, 151 L.Ed.2d 978 (2002) (quoting *Schell,* 843 F.2d at 940). "Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of the agency, the key issue in applying this exception is whether disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* (internal quote and citation omitted).

■ "The ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Redland Soccer,* 55 F.3d at 854 (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). The privilege "does not protect factual information, even if such information is contained in an otherwise protectable document as long as the information is severable." *Id.* The privilege also does not protect communications occurring after an agency decision is made. *Id.*

As stated by one court:

1. Some of the documents have been withheld in their entirety and some have been redacted to

withhold privileged portions and the non-privileged portions have been produced.

[a]ccording to several courts, if an agency is to receive the protections of the deliberative process privilege, that privilege must first be invoked by a high official, preferably the head of the agency. The official must then must demonstrate, preferably by affidavit, precise and certain reasons why the documents should be kept confidential, and the agency must provide fairly extensive identification and description for each document, to facilitate the court's application of the balancing test.

*In re Consolidated Litigation Concerning Intern. Harvester's Disposition of Wisconsin Steel,* Nos. 81 C 7076, 82 C 6895, 85 C 3521, 1987 WL 20408, *7 (N.D.Ill. Nov.20, 1987) (citing *U.S. v. Board of Educ. of City of Chicago,* 610 F.Supp. 695, 698 (N.D.Ill.1985); *Mobil Oil Corp. v. Dep't of Energy,* 102 F.R.D. 1, 5 (N.D.N.Y.1983)).

■ The EEOC has met its burden in this instance. The EEOC has submitted the affidavit of Naomi C. Earp, the Chair of the EEOC, invoking the deliberative process privilege with regard to the documents which bear Bates stamp numbers: 341, 343, 366, 380, and 391[Doc. No. 33–3 at 2, ¶ 4]. In her affidavit, Ms. Earp states she personally reviewed the subject documents and:

[t]he portions of documents described in Exhibit A contain predecisional analyses, recommendations, and conclusions of Commission investigatory and legal personnel regarding the investigation of Charge No. 253–2005–00738.

I conclude that disclosure to individuals outside the Commission of the portions of documents described in Exhibit A would inhibit the free expression of opinions by Commission employees, thereby impairing the Commission's ability to enforce the statutes within its authority.

[*Id.* at 1–2, ¶¶ 2, 3].

Based upon the *in camera* review of each document at issue and the evidence, the Court finds the deliberative process privilege applies to the portions of documents (Bates stamp numbers: 341, 343, 366, 380, and 391) withheld from Defendant by the EEOC. The Court also concludes all factual findings in these documents were disclosed. The very limited portions of these documents which

are being withheld by the EEOC under the deliberative process privilege clearly are predecisional and relate to the EEOC's internal decisionmaking process concerning the First Charge.

■ Although the privilege applies to these documents, it is not absolute. *Redland Soccer,* 55 F.3d at 854. Once the government shows it is entitled to the deliberative process privilege:

the district court should balance the competing interests of the parties. The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest. This Court has previously stated that "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case. . . ."

*Id.* (quoting *In re Grand Jury,* 821 F.2d 946, 949 (3rd Cir.1987)). In balancing the interests of the government and the party seeking disclosure, a district court should consider at a minimum the following factors:

(I) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* (quoting *First Eastern Corp. v. Mainwaring,* 21 F.3d 465, 468 n. 5 (D.C.Cir.1994)).

■ After balancing of the interests of the EEOC and Defendant, the Court finds the Defendant has not shown its need for the documents outweighs the EEOC's interests. Favoring the Defendant's position are the admission by the EEOC during the hearing that documents related to the First Charge are "not totally irrelevant" to this matter and that the litigation is serious and involves the important issue of alleged discrimination on the basis of religion. Favoring the EEOC's position are its role as a party in this action, the availability of other evidence, and the possibility of future timidity if the documents are revealed.

As to the availability of other evidence, the Defendant essentially argues it needs the documents for two reasons: it is evidence relevant to Defendant's state of mind and it is evidence relevant to testing the veracity of the EEOC's position regarding the dismissal of the First Charge. Defendant argues the EEOC injected its rationale for the dismissal of the First Charge in its complaint and discovery responses. In addition, Defendant argues the evidence is relevant to its state of mind because of statements allegedly made by EEOC investigator Chris Wing ("Wing") to Jacky Cook ("Cook"), an assembly area supervisor for Defendant and Vogeler's direct superior, on August 18, 2005. Cook testified Wing told Cook during the investigation of the First Charge that "he [Wing] would have done fired [Vogeler] if it would have been him." [*id.* at 3].

While the EEOC disputes Cook's description of Wing's alleged statement to him,[2] even if Cook's description of Wing's statement is fully credited, to the extent Defendant seeks to prove it did not act intentionally or maliciously because of this statement and/or the EEOC's determination of the First Charge, such an argument can be made without the documents. The Court is at a loss to see how the Defendant's state of mind could be shown by documents it did not have. To the extent relevant and admissible, the Defendant should be able to show its state of mind based upon the testimony of witnesses and non-privileged documents.

The Defendant also should be able to test and/or demonstrate the veracity of the EEOC's position and Wing's testimony using traditional methods of cross examination, direct examination, and discovery of non-privileged information. Defendant's desire to test the position of its adversary does not create a sufficient need for the documents in the context of the facts or the nature of the case on the current record.

In contrast, the disclosure of the very limited portions of the documents withheld under the deliberative process privilege could have a significant impact on the EEOC's internal decisionmaking process because exposure of these portions of the documents would undermine the frank exchange of information needed for the EEOC to perform its essential functions. *See Rugiero*, 257 F.3d at 550; *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 293 (N.D.W.Va.1992). In *Scott*, the Court found the defendant was seeking from the EEOC "personal notes and evaluations and interagency communications and critiques—[which] fall squarely within the class of material protected by the deliberative process privilege." *Id.* After finding the deliberative process privilege applied, the court applied the four factor balancing test to determine if PPG had overcome the privilege. The court found the fourth factor tipped the balance in favor of the EEOC and nondisclosure of the documents under the deliberative process privilege, stating:

> If the EEOC's investigators, attorneys and other employees knew that their personal notes and observations, and internal communications and critiques would be subject to disclosure in virtually every employment discrimination case, then frank and open communication within the agency would clearly be hindered. This would defeat the very purpose of an agency such as the EEOC.

*Id.*

Similarly, in *EEOC v. Continental Airlines, Inc.*, 395 F.Supp.2d 738 (N.D.Ill.2005), the court stated that subjecting the EEOC's:

> deliberations and assessments to disclosure would hinder future agency communications; courts cannot expect frank and open internal communications if each remark is a potential item of discovery and front page news.

*Id.* at 742 (internal quotation marks and citations omitted).

Although Defendant argues this in not the typical case because of, among other things, the different determinations in the First Charge and Second Charge, the above reasoning still applies here. Given the limited amount of information withheld as well as the

---

**2.** During the hearing, the EEOC stated Wing will dispute (to some degree) Cook's testimony regarding what Wing said to Cook.

nature of the withheld information,[3] the Court finds the impact of disclosure of the withheld information on the EEOC would far outweigh the value of the information to Defendant. Accordingly, the EEOC will **NOT** be compelled to disclose the portions of the documents which were withheld under the deliberative process privilege.

### B. The Attorney–Client Privilege

■■■ A governmental agency, such as the Plaintiff, can invoke the attorney-client privilege in the context of regulatory and civil litigation. *See Ross v. City of Memphis*, 423 F.3d 596, 601–02 (6th Cir.2005). The privilege belongs to the client agency. *Id.* at 603–04. Whether the attorney-client privilege applies to a given situation is a mixed question of law and fact. *Id.* at 600.

■■■ In the Sixth Circuit, the essential elements of the attorney-client privilege are:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) except the protection be waived.

*Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir.1985) (quoting *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964)). A claim of attorney-client privilege will be narrowly construed because it "reduces the amount of information discoverable during the course of a lawsuit." *Id.* The privilege is applied "where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *Id.*

■■■ The attorney-client privilege will be "waived by voluntary disclosure of private communications ... to third parties." *Id.* The client also waives the privilege "by conduct which implies a waiver of the privilege or a consent to disclosure." *Id.* Once the privilege is waived, it is waived in its entire-

ty. *Id.; In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d at 294.

■■■ The communications alleged to be protected from disclosure on the basis of the attorney-client privilege are identified as Bates stamped numbers: 341, 343, 344–48, 349, 351, 352, 356, 357, 380 and 391 [Doc. No. 33–2 at 1, 3–5]. During the hearing, the parties were in agreement that these documents are related to the First Charge and involve communications between EEOC personnel and EEOC attorneys or involve communications among EEOC attorneys. Based upon the descriptions of the documents in the EEOC's amended privilege log as well as the *in camera* review, the Court concludes these documents are protected from disclosure by the attorney-client privilege.

■■■ The inquiry cannot end here, however, because Defendant asserts the EEOC waived any attorney-client privilege by its actions. First, Defendant asserts the EEOC waived the privilege in its complaint when it alleged that:

[i]n light of Defendant's not taking any materially adverse employment action against Mr. Vogeler, the Commissioner dismissed the [First Charge] on September 12, 2005.

[Doc. No. 1 at 4, ¶ 17].

■■■ Second, Defendant contends the EEOC waived the attorney-client privilege in its response to discovery asking the EEOC to state the basis for the allegation in paragraph 17 of its complaint. The EEOC responded to the discovery request stating:

An adverse employment action is a necessary element for a cause of action based on failure to accommodate an employee's religious beliefs. Although Defendant was expressing its displeasure to Mr. Vogeler about his refusals to work on his Sabbath and marking him as absent, it had not discharged Mr. Vogeler or taken any action that caused him to lose income because of his refusal to work on his Sabbath as of September 12, 2005. The only in-

---

**3.** Based upon its *in camera* review, the Court notes the subject documents would not reveal otherwise unattainable relevant material facts.

The Defendant has been informed of the distinction the EEOC is claiming for its differing determinations.

come he had lost was what he voluntarily gave up by his own actions of not working on Saturdays. No adverse employment action = no cause of action. Accordingly, the EEOC dismissed Mr. Vogeler's charge of discrimination on September 12, 2005.

[Doc. No. 26–5 at 3].

█ Finally, Defendant asserts the EEOC also waived the attorney-client privilege on September 8, 2005 when Wing told Vogeler, a third party, the rationale for its dismissal of the First Charge; namely, that there was no cause of action because there was no adverse employment action. Defendant relies upon a "memo to the file" from Wing describing his communication with Vogeler on September 8, 2005, concerning the First Charge [Doc. No. 38–2]. In pertinent part, Wing's memo states he informed Vogeler:

1. The Commission has completed the investigation pertaining to your charge of discrimination. Based on the information gathered during this investigation, I am recommending a No Cause Determination be issued on this matter, as the evidence fails to support a Cause Determination for a violation of Title VII of the CRA of 1964, as amended, by the [Defendant].

2. The CP alleged that he has been discriminated against because of his religions beliefs and retaliated against from complaining of this discrimination. The evidence of record indicates that the CP was assessed "points" for missing scheduled Saturday overtime workdays, although prior to any disciplinary actions being imposed, the points were removed. He has not been subjected to any adverse employment action and has not worked on any Saturday. With no adverse employment action, there is no violation of any law enforced by the EEOC, thus a

cause finding in this matter can not be made.

3. It is unlikely that any further investigation will lead to the discovery that a violation of the laws enforced by EEOC has occurred. The Director of the Nashville District Office will render her decision based on the information obtained during the course of the investigation; however, such a determination will conclude the processing of this charge.

4. You have a right to file a lawsuit against the [Defendant] in the U.S. District Court within 90 days of the date on the determination notice signed by the Director.

[*Id.*].

In response, Plaintiff first submitted two pages from a compliance manual setting forth procedures for conducting a Pre–Determination Interview ("PDI") [Doc. Nos. 37 at 6, 37–2], which stated, in relevant part:

27.1 *Introduction*–This section describes the procedures for conducting [PDIs] in all cases.... The purpose of the PDI is to provide each party with one last opportunity to provide additional evidence in the case. **However, the EOS should not disclose the recommended disposition of the** case.

[Doc. No. 37–2 at 2] (emphasis added).[4]

After the Defendant raised an argument that Wing had violated the policy by revealing his recommendation in the PDI, the EEOC filed a notice of substitution indicating the above quoted pages from the compliance manual are "an obsolete draft of the Commission's Pre-determination Interview procedure that was inadvertently provided." [Doc. No. 40 at 1]. The EEOC asserted the "current" compliance manual relating to a PDI is attached to its notice of substitution [*id.*].[5] The relevant portion of the "current" compliance manual concerning a PDI states:

---

4. The portions of the EEOC manuals provided contain abbreviations, including EOS, CP and LOD that are not defined in the pages of the manuals submitted to the Court. The Court assumes that EOS stands for "Equal Opportunity Specialist", CP stands for "Charging Party" and LOD stands for "Letter of Decision."

5. No evidence appears in the record regarding which version of the compliance manual was in place at the time Wing conducted the PDI with Vogeler. The "current" version, however, appears to bear an issue date of 10/04 and a copyright date of 2004, which is prior to September

### 27.1 *Introduction*

This section contains procedures for conducting Pre–Determination Interviews (PDIs). Hold a PDI with the respondent in cause cases and with the charging party in no cause cases when sufficient evidence has been obtained to support a proposed determination (if a case involves both cause and no cause issues, hold a PDI with both parties).... The purpose of the PDI is to provide the party with a final opportunity to provide additional evidence in the case.

. . .

### 27.4 *Charging Party/Complainant PDI*

Conduct a PDI with the charging party/complainant when some or all of the issues are no cause.... In conducting the charging party PDI:

(a) **Summarize the evidence upon which the office Director will make a determination and indicate the proposed finding. However, inform the party that the proposed finding may be revised based upon additional evidence obtained during or after the PDI or upon review by the office Director;**

(b) Invite the party to provide any additional information and/or documentation which s/he would like to be considered;

(c) Inform the party of his/her private suit rights under the applicable laws;

(d) If an LOD is issued finding no cause on some or all of the issues, inform the party of the following:

(1) The LOD will inform the party of his/her private suit rights;

(2) S/he may, within 14 days after issuance of the LOD, request review of the no cause finding by following procedures set out in the LOD and its attachments; and

(3) If some of the issues are cause, and a review is requested of the no cause findings, the field office will ordinarily delay

8, 2005, when Wing conducted the PDI with

conciliation on the cause findings until the no cause review is completed....

[Doc. No. 40–2 at 1] (emphasis added).

Defendant has not contested EEOC's assertion that the "current" version of the policy is the applicable policy in this case. Defendant's argument that Wing violated EEOC's policy by disclosing the recommended disposition of the charge in the PDI would seem to be inapplicable under the "current" policy. However, Defendant's argument that the EEOC is using its legal advice to the prejudice of Defendant by putting its rationale for dismissing the First Charge at issue in this case remains under either version of the policy. Contrary to Defendant's position, however, the Court finds the EEOC has not waived the attorney-client privilege by its actions.

■ Voluntary disclosure of privileged communications to a third party is considered a waiver of the attorney-client privilege because it is inconsistent with the notion of confidentiality. *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir.1996)(citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3rd Cir.1991)). In paragraph 17 of its complaint and in its response to Defendant's First Set of Interrogatories, the EEOC set forth its ultimate conclusion/resolution of the First Charge. The EEOC did not, however, reveal the privileged communications involving Wing and EEOC attorneys or among the EEOC attorneys which led to the EEOC's ultimate conclusion and dismissal of the First Charge.

In *In re Dayco Corporation Derivative Securities Litigation*, 99 F.R.D. 616 (S.D.Ohio 1983), certain of the plaintiffs moved to compel production of a document entitled "Report of Counsel to the Special Review Committee of the Board of Directors of the Dayco Corporation" as well as other related documents. *Id.* at 618. In August of 1983, Dayco had issued a two-page press release "which summarized the establishment of the Committee ... and the 'findings' and 'conclusions' of the Committee...." *Id.* at 619. The district court found the release

Vogeler

of the findings, but not the substance of the report, did not constitute a waiver of the attorney-client privilege. *Id.* The district court noted that in the press release "Dayco did not release a 'significant part' of the special committee report. It merely released the *findings* of the report ... the press release did not summarize evidence found in the report...." *Id.* (emphasis in original).

In contrast, in *In re Grand Jury Proceedings*, 78 F.3d at 251, the owner and president of a nursing home met with government law enforcement agents who were investigating allegations that a private laboratory was improperly inducing nursing homes to give it business. *Id.* During the course of their meeting, the owner and president of the nursing home not only informed the agents they had consulted with an attorney, they discussed some of the advice the attorney had given them. *Id.* The Sixth Circuit noted the actions of the owner and president of the nursing home went beyond the situation in *Dayco* because they:

> did not merely assert that their attorney had looked into the matter; they told the investigators that they had described the specific programs in detail and that the attorney approved some parts of the plan and recommended they discontinue other parts. The information the owner and president gave the investigators revealed their attorney's legal conclusions and the facts on which those conclusions were based.

*Id.* at 254.

Paragraph 17 of the complaint and the discovery response reveal the EEOC's ultimate conclusion—its findings—as to the First Charge, but it did not reveal the conclusions, legal advice or privileged communication of the EEOC's attorneys during the investigation of the First Charge or the legal reasoning upon which the ultimate conclusion was based. Likewise, Wing's alleged statement to Vogeler during the PDI concerning the disposition of the First Charge did not disclose the internal, confidential communications which took place among EEOC attorneys or between EEOC attorneys and Wing during the course of the First Charge. Although Wing briefly summarized the evidence for Vogeler, the attorney-client privilege protects communications rather than information. Thus, the privilege does not impede disclosure of information except to the extent that the disclosure would reveal confidential communications. As such, Wing's communication with Vogeler is not inconsistent with the notion of confidentiality upon which the attorney-client privilege is based.

The Court concludes the EEOC did not waive the attorney-client privilege based upon paragraph 17 of its complaint, its discovery response, and/or the PDI communication between Wing and Vogeler. Accordingly, the EEOC will **NOT** be compelled to disclose the subject documents withheld in whole or in part under the attorney-client privilege.

## IV. Conclusion

Accordingly, Defendant's motion to compel [Doc. No. 26] is **DENIED** in its entirety.